424-08/LJK
Freehill Hogan & Mahar, LLP
Attorneys for Defendant
Pacific Inter-Link Sdn Bhd
80 Pine Street
New York, NY 10005
(212) 425-1900
(212) 425-1901 fax

Lawrence J. Kahn (LK 5215)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
EFKO FOOD INGREDIENTS, LTD.,

                 Plaintiff,

      -against-

PACIFIC INTER-LINK SDN BHD,

                Defendant.
-------------------------------------------------------x

**08 CV 6480 (CM)**

**KAHN AFFIRMATION IN
SUPPORT OF VACATURE OF
ATTACHMENT AND/OR
DISMISSAL OF ACTION**

      LAWRENCE J. KAHN, an attorney at law, affirms under penalty of perjury as follows:

      1.     I am an attorney admitted to practice before this Court and am a partner of the law firm of Freehill Hogan & Mahar, LLP, attorneys for Defendant Pacific Inter-Link Sdn Bhd ("PIL"). I am not a party to the action, am over 18 years of age and reside at 80 Pine Street, New York, New York. I submit this Affirmation on behalf of PIL in support of its motion for vacature of the maritime attachment obtained in this action and/or for dismissal of this action in its entirety for lack of subject matter jurisdiction. PIL also submits that the attachment obtained in this action was wrongful and accordingly it should be awarded its costs and attorneys fees as sanctions.

2.      Plaintiff EFKO commenced the instant action by filing a Verified Complaint, a copy of which is annexed hereto as Ex. 1. The Complaint sought a Rule B attachment, granted by the Court, to restrain nearly six million dollars of PIL's property. EFKO has now restrained the full amount sought.

3.      That Complaint, verified by EFKO's New York counsel, makes very specific allegations about the contractual relationship between EFKO and PIL.   In particular, the complaint alleges that PIL had contracted directly with EFKO to provide a quantity of palm olien, that PIL agreed to charter ships to transport the palm olien, and other matters.

4.      As can be seen from the accompanying Rastogi Declaration, it is PIL's position that no contract exists between PIL and EFKO, because EFKO failed to accept the offers made by PIL to sell the palm olien. As can be seen from the accompanying Sach Declaration, under English law, indeed no contract was formed between these parties.

5.      Given, however, the specificity of the allegations in EFKO's Verified Complaint, the undersigned wrote to EFKO's New York counsel, requesting copies of any supporting documents from EFKO's side that would indicate that EFKO and PIL had in fact entered into a contract with one another. EFKO's New York counsel, after several days, responded only that this was one of many matters that should be referred to EFKO's Ukrainian counsel, Astapov. See email exchange, annexed hereto as Ex. 2.

6.      EFKO's New York counsel was thoroughly unable (or unwilling) to support any of the allegations made in support of the Verified Complaint.  Under circumstances where it was plain that (at a minimum) a challenge to the attachment

pursuant to Rule E(4)(f) would be made, EFKO should have responded with any documents (which would be needed to support its claims in the arbitrations in any event) that supported the claim that a contract existed between EFKO and PIL. Plainly, if such documentation existed, it could have served to avoid the instant motion.

7.     Under such circumstances, undersigned counsel could only conclude that no such documentation existed, and that EFKO's New York counsel had not made its own required Rule 11 inquiry to determine whether a good faith basis existed for the allegations alleged in the Complaint they verified, relying solely on the say-so of EFKO's Ukrainian counsel without any documentary evidence. Indeed, even after several days of EFKO's New York and Ukrainian counsel conferring with one another, no supporting documentation was produced.

8.     Accordingly, the undersigned issued EFKO's New York counsel a required Rule 11 safe harbor letter, asking that EFKO promptly dismiss the action with prejudice and voluntarily release PIL's funds. EFKO has failed to do so. See email of August 6, 2008, annexed hereto as Ex. 3.

9.     Only after the issuance of a safe harbor letter did EFKO's New York counsel produce anything at all. What EFKO's counsel produced, however, was entirely inadequate to the task. EFKO's counsel produced PIL's offers – which were not executed by EFKO (and hence on their face not executed contracts), and an unsworn letter dated January 31, 2008 from Adrian Bell saying essentially that he thought a contract had been formed even before PIL had issued its offers. See email from EFKO's New York counsel with attached exhibit, Ex. 4 hereto.

10.    Such letter from Mr. Bell is entirely inconsistent with Mr. Bell's contemporaneous email to PIL's Mr. Rastogi of September 11, 2007 at 10:10 pm (issued shortly after PIL's offers were sent to Mr. Bell), in which Mr. Bell indicates an attempt to further negotiations concerning quality on delivery, attempts to extend the time for a response from EFKO (because of Mr. Bell's need to translate the offers), and seeks to obtain an agreement from PIL that it will not make the same offer to EFKO directly, but only through him/his company, Pontus. See Rastogi Declaration ¶8 and Ex. 2 thereto.

11.    It appears from the communication that EFKO's New York counsel had not received even this documentation until August 7, 2008, in response to the safe harbor letter. Accordingly, it seems the required Rule 11 investigation had not been made prior to filing the Verified Complaint on July 21, 2008, and accordingly the verification of EFKO's New York counsel was based not on personal knowledge or documents in  file, but rather only on EFKO's (or its Ukrainian instructing counsel's) say-so.

12.    PIL submits that under the circumstances, the attachment was wrongful and that it should recover its fees and disbursements in connection with vacature. PIL respectfully submits further that the full amount of its recoverable fees and disbursements should be assessed following the Court's decision at an inquest.

13.    A true and accurate copy of the Court's holding in the unpublished decision of Shanghai Sinom Import and Export v. Exfin (India) Mineral Ore Co. Pvt. Ltd., 06 CIV 4711 (GEL) (S.D.N.Y. Oct. 5, 2006) is annexed hereto as Ex. 5.

14.    A true and accurate copy of the FOSFA "Guide to Arbitrations and Appeals" is annexed hereto as Ex. 6.

15.   A true and accurate copy of the FOSFA "Rules of Arbitration and Appeal" is annexed hereto as Ex. 7.

16.   There has been no prior request for the relief sought herein.

Dated: New York, New York
      August 13, 2008

                            Lawrence J. Kahn (LK 5215)

# KAHN DECLARATION

## EXHIBIT 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------X
EFKO FOOD INGREDIENTS LTD.,    :

        Plaintiff,    :

  - against -    :

PACIFIC INTER-LINK SDN BHD,    :

        Defendant.    :
------------------------------------------------X

**08 CIV 6480**

### VERIFIED COMPLAINT

Plaintiff, EFKO FOOD INGREDIENTS LTD. (hereinafter referred to as "Plaintiff" or "EFKO"), by and through its attorneys, Tisdale Law Offices LLC, as and for its Verified Complaint against the Defendant PACIFIC INTER-LINK SDN BHD (hereinafter referred to as "Defendant" or "PIL"), alleges, upon information and belief, as follows:

1.    This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and 28 United States Code § 1333.

2.    At all times material to this action, Plaintiff was, and still is, a foreign company duly organized and operating under foreign law with a principal place of business in Russia.

3.    Upon information and belief, Defendant was, and still is, a foreign corporation or other business entity organized under and existing by virtue of foreign law with a place of business in Kuala Lumpur.

4.    By six contracts dated September 7, 2007, Defendant sold six shipments of 1500 metric tons each red palm olein in bulk, each to be loaded by Defendant onto oceangoing vessels in consecutive months between January and June, 2008.

5.     Each of the contracts were pursuant to CFR terms, whereby the Defendant was obligated to arrange for and charter a vessel to carry the cargo to destination, and to load the cargo aboard the vessel at a port in Malayasia for carriage by sea and ultimate delivery to Plaintiff at the port of Ilychevsk, Ukraine.  Title would not pass until the cargo was on board the vessel, afloat.

6.     Certain disputes arose between the parties after the Defendant failed to charter the vessel, load the cargo and transfer title of the goods as per the shipment terms in the contracts.

7.     As a result of Defendant's breaches of the contracts, Plaintiff has suffered damages in the principal amount of $4,073,250.00.

8.     Despite due demand, Defendant has failed to pay the sums due and owing as a result of its breaches of the contracts.

9.     Pursuant to Articles 31 and 32 of the FOSFA 81, any disputes arising thereunder shall be referred to Arbitration in London with English law to apply.

10.     Plaintiff has commenced arbitration in London and appointed its arbitrator.

11.     Interest, costs and attorneys' fees are routinely awarded to the prevailing party in London Arbitration proceedings.  As best as can now be estimated, Plaintiff expects to recover the following amounts:

| | | | |
|---|---|---|---|
| A. | Principal claim: | | $4,073,250.00 |
| B. | Estimated interest on claims: 3 years at 6.5% | | $ 943,391.17 |
| C. | Estimated attorneys' fees: | | $ 600,000.00 |
| D. | Estimated arbitrators' fees | | $ 115,000.00 |
| **Total** | | | **$5,731,641.10** |

2

12. The Defendant cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, but, upon information and belief, Defendant has, or will have during the pendency of this action, assets within this District and subject to the jurisdiction of this Court, held in the hands of garnishees within the District which are believed to be due and owing to the Defendant.

13. The Plaintiff seeks an order from this court directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, and also pursuant to the United States Arbitration Act, 9 U.S.C. §§ 1 and 8, attaching, *inter alia*, any property of the Defendant held by any garnishees within the District for the purpose of obtaining personal jurisdiction over the Defendant, to compel arbitration and to secure the Plaintiff's claim as described above.

**WHEREFORE**, Plaintiff prays:

A. That process in due form of law issue against the Defendant, citing it to appear and answer under oath all and singular the matters alleged in the Complaint, failing which default judgment be entered against it in the sum of **$5,731,641.10.**

B. That since the Defendant cannot be found within this District pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, this Court issue an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, also pursuant to the United States Arbitration Act, 9 U.S.C. §§ 1 and 8, attaching all goods, chattels, credits, letters of credit, bills of lading, effects, debts and monies, tangible or intangible, or any other funds up to the amount of **$5,731,641.10** belonging to, due or being transferred to, from, or

for the benefit of the Defendant, including but not limited to such property as may be held,

received or transferred in Defendant's name or as may be held, received or transferred for its

benefit at, moving through, or within the possession, custody or control of banking/financial

institutions and/or other institutions or such other garnishee(s) to be named, and that all persons

claiming any interest in the same be cited to appear and pursuant to Supplemental Admiralty

Rule B answer the matters alleged in the Complaint;

     C.     That pursuant to 9 U.S.C. §§201 et seq. this Court recognize and confirm any

London arbitration award in Plaintiff's favor against the Defendant as a judgment of this Court;

     D.     That this Court award Plaintiff the attorneys' fees and costs incurred in this

action; and

     E.     That the Plaintiff have such other, further and different relief as the Court

may deem just and proper.

Dated: July 21, 2008
     New York, NY

                            The Plaintiff,
                            EFKO FOOD INGREDIENTS LIMITED,

By:          _____
                            Lauren C. Davies (LD 1980)
                            Thomas L. Tisdale (TT 5263)
                            TISDALE LAW OFFICES LLC
                            11 West 42nd Street, Suite 900
                            New York, NY 10036
                            (212) 354-0025 – phone
                            (212) 869-0067 – fax
                            ldavies@tisdale-law.com
                            ttisdale@tisdale-law.com

## ATTORNEY'S VERIFICATION

State of Connecticut  )
                  )   ss.:   City of Southport
County of Fairfield    )

1. My name is Thomas L. Tisdale.

2. I am over 18 years of age, of sound mind, capable of making this Verification, and fully competent to testify to all matters stated herein.

3. I am an Attorney in the firm of Tisdale Law Offices, LLC, attorneys for the Plaintiff.

4. I have read the foregoing Verified Complaint and know the contents thereof and believe the same to be true and accurate to the best of my knowledge, information and belief.

5. The reason why this Verification is being made by the deponent and not by the Plaintiff is that the Plaintiff is a business organization with no officers or directors now within this District.

6. The source of my knowledge and the grounds for my belief are the statements made, and the documents and information received from, the Plaintiff and agents and/or representatives of the Plaintiff.

7. I am authorized to make this Verification on behalf of the Plaintiff.

Dated:      July 21, 2008
           Southport, CT

_____
Thomas L. Tisdale

5

KAHN DECLARATION

EXHIBIT 2

## KAHN, LARRY J.

**From:** Lauren C. Davies [ldavies@tisdale-law.com]
**Sent:** Thursday, July 31, 2008 5:53 PM
**To:** KAHN, LARRY J.; Thomas Tisdale
**Subject:** RE: EFKO v. Pacific Inter-Link // TLO File 08-1924

Dear Larry,

Thank you for your email. We hope to get you a response tomorrow after we are able to confer with our clients.

Have a good night.

Best,

Lauren

**Lauren Cozzolino Davies | Tisdale Law Offices, LLC**
11 W. 42nd Street | Suite 900 | New York, NY 10036
(212) 354-0025 T | (212) 869-0067 F
10 Spruce Street | Southport, CT 06890
(203) 254-8474 T | (203) 254-1641 F

www.tisdale-law.com
***NOTICE***
This message is being sent by a lawyer. It may contain attorney-client or attorney work-product information
subject to legal privilege. If you receive this email in error, please notify the sender. Thank you.

**From:** KAHN, LARRY J. [mailto:KAHN@FREEHILL.COM]
**Sent:** Wednesday, July 30, 2008 6:12 PM
**To:** Lauren C. Davies; Thomas Tisdale
**Subject:** EFKO v. Pacific Inter-Link

Our ref: 484-08/LJK

WITHOUT PREJUDICE

Dear Lauren and Tom:

I write to follow up on this matter. As indicated by phone, we represent defendant Pacific Inter-Link in this action and we
have been instructed to challenge the attachment obtained by your client, EFKO.

In this regard, Pacific advises that:

(a) there is no contract between the two sides to this dispute, and privity is lacking.

(b) there was an offer made to supply palm olein, but this offer was never accepted by EFKO or by its agent, Pontus
(despite several prompts by Pacific), and the offer was thereafter withdrawn with notice of withdrawal by Pacific.

(c) even to the extent that the unaccepted and withdrawn offer is to be considered an enforceable contract (which is
denied), it is merely a sale and purchase contract that contains no maritime obligations on the part of Pacific and
accordingly does not give rise to this court's admiralty jurisdiction. (See Judge Daniels' decision in Aston Agro v. Star

Grain which is directly on point.)

(d) no written agreement to arbitrate exists between the two sides, and Pacific has submitted to arbitrate (thus far) only the question of whether the FOSFA arbitrators have jurisdiction over this matter at all.

(e) FOSFA arbitration, commenced by your client, does not provide for legal representation or the recovery of legal fees and accordingly that portion of the Rule B attachment that seeks security for amounts expended in that regard is improper.

If you have any documents that would respond to points a-e above (including especially any executed contract between the two sides), it might go a long way to resolving this dispute and avoiding the cost of motion practice.  With regard to point e, please advise if you have information that differs from mine.  If not, please advise your willingness to voluntarily and promptly release the appropriate amount of security.

Thanks your attention to this.

Regards,
FH&M/Larry

**LAWRENCE J. KAHN**
**FREEHILL HOGAN & MAHAR LLP**
80 Pine Street, New York, N.Y. 10005-1759
Tel: 212-425-1900
Fax: 212-425-1901
Direct: 212-381-3021
Cell: 347-803-0448
E-mail: kahn@freehill.com

-------------------------------------------

PLEASE NOTE: The information contained in this message is privileged and confidential, and is intended only for the use of the individual named above and others who have been specifically authorized to receive such. If you are not the intended recipient, you are hereby notified that any dissemination, distribution or copy of this communication is strictly prohibited. If you received this communication in error, or if any problems occur with transmission, please notify us immediately by telephone - (212) 425-1900. Thank you.

8/13/2008

## KAHN, LARRY J.

**From:**   Lauren C. Davies [ldavies@tisdale-law.com]
**Sent:**   Monday, August 04, 2008 8:59 AM
**To:**   KAHN, LARRY J.
**Cc:**   Thomas Tisdale
**Subject:** EFKO v. PIL // TLO FIle 1924

Dear Larry,

We have now received a response to your questions from our clients. First off, please inform your clients that our law firm has been retained only for the New York attachment proceedings and is not involved in the FOSFA Arbitration proceedings in London. In the London proceedings, EFKO is represented by Astapov Lawyers International Law Group. For the issues that arise on the validity of the contracts and arbitration agreements, our clients have asked that you address Astapov Lawyers.

In response to your questions of Wednesday evening 6/30/08, we comment as follows:

a) to the best of our knowledge there are six duly concluded contracts under English law between PIL and EFKO. Anyway, the validity and/or existence of such contracts should be resolved in the course of London Arbitration proceedings.

b) to the best of our knowledge the contracts were duly concluded. Besides, we refer you to the above concerning the issue of the validity of the contracts.

c) the contracts in question are concluded on CFR basis. There is no doubt that such contracts contain a separate maritime obligation of the Seller to deliver the goods by sea to the Buyer unlike FOB contracts, which do not. Your clients have thus breached a maritime obligation under these contracts. As such, EFKO is entitled to the relief pursuant to supplemental Rule B.

d) as we are informed by Astapov Lawyers no submissions on the jurisdiction of FOSFA had been filed and no order by the Tribunal was issued on this issue yet. As to the validity of the agreement, please, refer to a) and b) in the above.

e) In reply to your question on the recoverability of legal costs, please, refer to FOSFA Rules of Arbitration and Appeal and appropriate regulations of English law.

We hope that the above answers your questions.

If you have any other questions regarding London Arbitration proceedings, please contact the case handlers at AstapovLawyers Mr. Oleksiy Sereda and Mr. Eugene Blinov via the following e-mail addresses:
sereda@astapovlawyers.com
blinov@astapovlawyers.com

Kind regards,

Lauren Davies
**Lauren Cozzolino Davies | Tisdale Law Offices, LLC**
11 W. 42nd Street | Suite 900 | New York, NY 10036
(212) 354-0025 T | (212) 869-0067 F
10 Spruce Street | Southport, CT 06890
(203) 254-8474 T | (203) 254-1641 F

www.tisdale-law.com
***NOTICE***
This message is being sent by a lawyer. It may contain attorney-client or attorney work-product information

subject to legal privilege.  If you receive this email in error, please notify the sender.  Thank you.

KAHN DECLARATION

EXHIBIT 3

## KAHN, LARRY J.

| | |
|---|---|
| **From:** | KAHN, LARRY J. |
| **Sent:** | Wednesday, August 06, 2008 5:23 PM |
| **To:** | 'Lauren C. Davies' |
| **Cc:** | Thomas Tisdale |
| **Subject:** | RE: EFKO v. PIL // TLO FIle 1924 |

Dear Lauren:

Thanks your response below. Regrettably, your response doesn't answer any of the questions we asked except to refer us for answers to EFKO's Ukrainian counsel, Astapov. More importantly, your response lacked any documentary support whatsoever for the allegations asserted in the Rule B complaint you filed and verified. This is very unlike your firm's normal practice, particularly when the very foundation of your client's claim - a purported contractual agreement - is called into question. The only conclusion we can draw from this is that your file lacks any documentary evidence whatsoever that would indicate that you conducted any independent Rule 11 inquiry into the truth of the allegations made in the Complaint, and that your clients, even after several days, were unable to provide you with any documentary proof that the allegations are true. You appear to have verified your complaint based solely on the say-so of your instructing counsel Astapov.

Under the circumstances, please consider this message to be your safe harbor warning under Rule 11. We ask that you voluntarily dismiss the action with prejudice and release PIL's funds without further delay. Your failure to do so promptly will result in a motion to vacate and/or dismiss in which we are instructed to seek sanctions in the form of our client's fees and costs.

Please be guided accordingly.

Regards,
FH&M/Larry

---

**From:** Lauren C. Davies [mailto:ldavies@tisdale-law.com]
**Sent:** Monday, August 04, 2008 8:59 AM
**To:** KAHN, LARRY J.
**Cc:** Thomas Tisdale
**Subject:** EFKO v. PIL // TLO FIle 1924

Dear Larry,

We have now received a response to your questions from our clients. First off, please inform your clients that our law firm has been retained only for the New York attachment proceedings and is not involved in the FOSFA Arbitration proceedings in London. In the London proceedings, EFKO is represented by Astapov Lawyers International Law Group. For the issues that arise on the validity of the contracts and arbitration agreements, our clients have asked that you address Astapov Lawyers.

In response to your questions of Wednesday evening 6/30/08, we comment as follows:

a) to the best of our knowledge there are six duly concluded contracts under English law between PIL and EFKO. Anyway, the validity and/or existence of such contracts should be resolved in the course of London Arbitration proceedings.

b) to the best of our knowledge the contracts were duly concluded. Besides, we refer you to the above concerning the issue of the validity of the contracts.

c) the contracts in question are concluded on CFR basis. There is no doubt that such contracts contain a separate

8/13/2008

maritime obligation of the Seller to deliver the goods by sea to the Buyer unlike FOB contracts, which do not. Your clients have thus breached a maritime obligation under these contracts. As such, EFKO is entitled to the relief pursuant to supplemental Rule B.

d) as we are informed by Astapov Lawyers no submissions on the jurisdiction of FOSFA had been filed and no order by the Tribunal was issued on this issue yet. As to the validity of the agreement, please, refer to a) and b) in the above.

e) In reply to your question on the recoverability of legal costs, please, refer to FOSFA Rules of Arbitration and Appeal and appropriate regulations of English law.

We hope that the above answers your questions.

If you have any other questions regarding London Arbitration proceedings, please contact the case handlers at AstapovLawyers Mr. Oleksiy Sereda and Mr. Eugene Blinov via the following e-mail addresses:
sereda@astapovlawyers.com
blinov@astapovlawyers.com

Kind regards,

Lauren Davies
**Lauren Cozzolino Davies | Tisdale Law Offices, LLC**
11 W. 42nd Street | Suite 900 | New York, NY 10036
(212) 354-0025 T | (212) 869-0067 F
10 Spruce Street | Southport, CT 06890
(203) 254-8474 T | (203) 254-1641 F

www.tisdale-law.com
***NOTICE***
This message is being sent by a lawyer. It may contain attorney-client or attorney work-product information subject to legal privilege. If you receive this email in error, please notify the sender. Thank you.

**K A H N   D E C L A R A T I O N**

**E X H I B I T   4**

## KAHN, LARRY J.

| | |
|---|---|
| **From:** | Lauren C. Davies [ldavies@tisdale-law.com] |
| **Sent:** | Thursday, August 07, 2008 5:55 PM |
| **To:** | KAHN, LARRY J. |
| **Cc:** | Thomas Tisdale |
| **Subject:** | EFKO v. PIL // TLO File 1924 |
| **Attachments:** | Message from KMBT_420 |

Dear Larry,

In response to your email of yesterday, and contrary to its improper assumptions, please find enclosed the six contracts signed by your client that we have in our file. Please also find enclosed a letter signed by Mr. Adrian Bell, the agent for EFKO in negotiations with your client over these contracts. As previously stated, regarding the maritime nature of the contract, PIL breached several maritime obligations within the contracts including failure to charter a vessel and carry the cargo to destination by sea. As such, Aston Agro v. Star Grain is not analogous.

We look forward to receiving from you the evidence you say you have that the offer was withdrawn with notice of the withdrawal by Pacific.

Regards,

Lauren Davies
**Lauren Cozzolino Davies | Tisdale Law Offices, LLC**
11 W. 42nd Street | Suite 900 | New York, NY 10036
(212) 354-0025 T | (212) 869-0067 F
10 Spruce Street | Southport, CT 06890
(203) 254-8474 T | (203) 254-1641 F

www.tisdale-law.com
***NOTICE***
This message is being sent by a lawyer. It may contain attorney-client or attorney work-product information subject to legal privilege. If you receive this email in error, please notify the sender. Thank you.

**KAHN, LARRY J.**

| | |
|---|---|
| **From:** | tl@tisdale-law.com |
| **Sent:** | Thursday, August 07, 2008 4:52 PM |
| **To:** | Lauren C. Davies |
| **Subject:** | Message from KMBT_420 |
| **Attachments:** | SKMBT_42008080715510.pdf |



ASTAPOV | INTERNATIONAL
LAWYERS | LAW
GROUP

3 Shovkovychna str., 1st floor,
Kyiv, 01008, Ukraine
Phone: +38 (044) 253 14 34, 253 79 04
Fax: +38 (044) 253 69 31
e-mail: office@astapovlawyers.com
www.astapovlawyers.com

| | |
|---|---|
| Reference number: | *L-00194/05/08* |
| To: | *Messrs. Pacific Inter-Link SDN BHD* |
| Copy: | *FOSFA International* |
| Subject: | *RE: Contract PIL/PO/0689/07 dated 7 September 2007* |
| Date: | *28 May 2008* |
| Page: | *1 of 1* |
| Fax No.: | *+60 3 4041 3939* |
| | *+44 20 7623 1310* |

Dear Sirs,

We are the Firm of Lawyers acting as Attorneys and Legal Counselors for Messrs. EFKO FOOD INGREDIENTS LIMITED in the matter of the Contract PIL/PO/0689/07 dated 7 September 2007 for the delivery of 1,500 MTS of RBD Palm Olein in bulk CFR Port Ilyichevsk, shipment in January, concluded between our Clients as the Buyers and Yourselves as the Sellers do inform you on the following.

With reference to Your default of delivery under the above mentioned Contract we hereby declare that a dispute has arisen between Your Company and our Clients and refer this dispute to the Arbitration of FOSFA in accordance with the Arbitration Clause of the Contract.

We hereby nominate Mr. Graham Perry as our Arbitrator. Mr. Graham Perry has already accepted his nomination.

In addition to the following, we hereby request You as the Respondents in this dispute to accept Mr. Graham Perry as a Sole Arbitrator in accordance with Rule 1 (a) of FOSFA Rules of Arbitration and Appeal or appoint an Arbitrator to act for Yourself in relevant terms and conditions.

Yours Faithfully,

Astapov Lawyers
International Law Group

*This fax message is confidential and for use by the addressee only and may be legally privileged. If the message is received by anyone other than the addressee, please destroy it and notify the sender immediately.*



**ASTAPOV LAWYERS | INTERNATIONAL LAW GROUP**

3 Shovkovychna str., 1st floor,
Kyiv, 01008, Ukraine
Phone: +38 (044) 253 14 34, 253 79 04
Fax: +38 (044) 253 69 31
e-mail: office@astapovlawyers.com
www.astapovlawyers.com

| | |
|---|---|
| Reference number: | L-00195/05/08 |
| To: | Messrs. Pacific Inter-Link SDN BHD |
| Copy: | FOSFA International |
| Subject: | RE: Contract PIL/PO/0690/07 dated 7 September 2007 |
| Date: | 28 May 2008 |
| Page: | 1 of 1 |
| Fax No.: | +60 3 4041 3939 |
| | +44 20 7623 1310 |

Dear Sirs,

We are the Firm of Lawyers acting as Attorneys and Legal Counselors for Messrs. EFKO FOOD INGREDIENTS LIMITED in the matter of the Contract PIL/PO/0690/07 dated 7 September 2007 for the delivery of 1,500 MTS of RBD Palm Olein in bulk CFR Port Ilyichevsk, shipment in February, concluded between our Clients as the Buyers and Yourselves as the Sellers do inform you on the following.

With reference to Your default of delivery under the above mentioned Contract we hereby declare that a dispute has arisen between Your Company and our Clients and refer this dispute to the Arbitration of FOSFA in accordance with the Arbitration Clause of the Contract.

We hereby nominate Mr. Graham Perry as our Arbitrator. Mr. Graham Perry has already accepted his nomination.

In addition to the following, we hereby request You as the Respondents in this dispute to accept Mr. Graham Perry as a Sole Arbitrator in accordance with Rule 1 (a) of FOSFA Rules of Arbitration and Appeal or appoint an Arbitrator to act for Yourself in relevant terms and conditions.

Yours Faithfully,

Astapov Lawyers
International Law Group

This fax message is confidential and for use by the addressee only and may be legally privileged. If the message is received by anyone other than the addressee, please destroy it and notify the sender immediately.



**ASTAPOV LAWYERS** | **INTERNATIONAL LAW GROUP**

3 Shovkovychna str., 1st floor,
Kyiv, 01008, Ukraine
Phone: +38 (044) 253 14 34, 253 79 04
Fax: +38 (044) 253 69 31
e-mail: office@astapovlawyers.com
www.astapovlawyers.com

| | |
|---|---|
| Reference number: | *L-00196/05/08* |
| To: | *Messrs. Pacific Inter-Link SDN BHD* |
| Copy: | *FOSFA International* |
| Subject: | *RE: Contract PIL/PO/0691/07 dated 7 September 2007* |
| Date: | *28 May 2008* |
| Page: | *1 of 1* |
| Fax No.: | *+60 3 4041 3939* |
| | *+44 20 7623 1310* |

Dear Sirs,

We are the Firm of Lawyers acting as Attorneys and Legal Counselors for Messrs. EFKO FOOD INGREDIENTS LIMITED in the matter of the Contract PIL/PO/0691/07 dated 7 September 2007 for the delivery of 1,500 MTS of RBD Palm Olein in bulk CFR Port Ilyichevsk, shipment in March, concluded between our Clients as the Buyers and Yourselves as the Sellers (the copy of which is attached) do inform you on the following.

With the reference to Your default of delivery under the above mentioned Contract we hereby declare that a dispute has arisen between Your Company and our Clients and refer this dispute to the Arbitration of FOSFA in accordance with the Arbitration Clause of the Contract.

We hereby nominate Mr. Charles Debattista as our Arbitrator. Mr. Charles Debattista has already accepted this nomination.

In addition to the following, we hereby request You as the Respondents in this dispute to accept Mr. Charles Debattista as a Sole Arbitrator in accordance with Rule 1 (a) of FOSFA Rules of Arbitration and Appeal or appoint an Arbitrator to act for Yourself in relevant terms and conditions.

Yours Faithfully,

Astapov Lawyers
International Law Group

---

*This fax message is confidential and for use by the addressee only and may be legally privileged. If the message is received by anyone other than the addressee, please destroy it and notify the sender immediately.*

**To whom it may concern**

I, Adrian Bell, Director of Pontus Trade hereby confirm the following:

In August-September 2007 I was approached by Mr. Evgeniy Lyashenko of Messrs. EFKO Food Ingredients Limited to conclude a contract for various deliveries of RBD Palm Olein from Asian suppliers.

Eventually, I was acting as an agent for EFKO in negotiations with Messrs. Pacific Inter-Link SDN BHD. At this time, I was in frequent contact with Mr. Nakul of Pacific Inter-Link with whom we discussed the deliveries in question. It is my understanding that Mr. Nakul was aware that I was acting on behalf of EFKO.

On or around 7 September 2007 we reached an understanding with Mr. Nakul as to the terms and conditions of shipment for the above goods in equal parcels of 1500 MT during January, February, March, April, May and June (total of 6 shipment periods). I immediately communicated this agreement to the Buyers and obtained their written confirmation on or around 11 September 2007 in the form of an e-mail from Mr. Lyashenko.

Pacific Inter-Link assured me that the contract was concluded and that they would shortly be sending a confirmation of same in writing. An e-mail to this effect followed on or around 11th September 2007.

In due course I forwarded the contracts to Messrs. EFKO as buyers.

Based on the above, it my understanding that I concluded valid and binding contracts on behalf of Messrs. EFKO Food Ingredients Limited as buyers with Messrs. Pacific Inter-Link SDN BHD as sellers.

To the best of my knowledge and recollection, I confirm that the above facts are true and reflect the true course of events.

Yours faithfully

Dated: 31.01.2008



# PACIFIC INTER-LINK SDN BHD

31ˢᵗ FLOOR, MENARA DATO ONN', PUTRA WORLD TRADE CENTRE
45 JALAN TUN ISMAIL, 50480 KUALA LUMPUR
TEL: 603 – 4042 3933          FAX: 603 – 4041 3939 / 4042 8088

Form No: PIL/FM/006
Rev No: 0
Page 1 of 4

## SALES CONTRACT

**TO :** EFKO FOOD INGREDIENTS LIMITED
RUSSIA

**DATE  : 07/09/2007**
**OUR REF: PIL/PO/0689/07**

**AMENDMENT NO   :**
**AMENDMENT DATE :**

**ATTN  :**

**YOUR REF:**

WE ARE PLEASED TO CONFIRM HAVING SOLD TO YOU THE FOLLOWING SUBJECT
TO OUR GENERAL TERMS AND CONDITIONS OF SALE AND AS PER HEREUNDER :

| S/NO. | DESCRIPTION OF GOOD(S) | QTY | UNIT PRICE (USD) | TOTAL VALUE (USD) |
|---|---|---|---|---|
| | RBD PALM OLEIN IN BULK PMT CFR PORT ILYICHEVSK | 1,500 MTS | 809.00 | 1,213,500.00 |
| | | | | |

**COUNTRY OF ORIGIN**     :     **MALAYSIA / INDONESIA**

**PORT OF LOADING**     :     **MALAYSIA / INDONESIA**

**SHIPMENT MONTH**     :     **JANUARY 2008**

**PACKING**     :     **IN BULK**

**PAYMENT TERMS**     :     **100 % OF THE INVOICE VALUE BY TELEGRAPHIC TRANSFER
TO PIL'S BANK 15 DAYS BEFORE THE ARRIVAL OF
PERFORMING VESSEL TO THE DISCHARGE PORT
CARRYING THE CONTRACTED QUANTITIES.**

**BANK DETAILS**     :     **RHB BANK BERHAD**

**AddresS : KL TRADE SERVICES CENTRE,
LEVEL 3,4, & 5, NO: 75, JALAN TUN H.S. LEE
50000 KUALA LUMPUR.**

**Account No : USD A/C NO: 61412900006928**

**Swift No   :  RHBBMYKL.**

**Correspondent
Bank for USD A/C     : BANK OF NEW YORK**

**SWIFT                      : IRVTUS3N**



**PACIFIC INTER-LINK SDN BHD**
31ˢᵗ FLOOR, MENARA DATO ONN', PUTRA WORLD TRADE CENTRE
45 JALAN TUN ISMAIL, 50480 KUALA LUMPUR
TEL: 603 – 4042 3933          FAX: 603 – 4041 3939 / 4042 8088

Form No: PIL/FM/006
Rev No: 0
Page 2 of 4

| | | |
|---|---|---|
| SPECIFICATIONS | : | AS PER PORAM STANDARD SPECS (AT THE TIME OF SHIPMENT) |
| WEIGHT | : | AS FINAL AT LOAD PORT. FINAL WEIGHT AT LOAD PORT TO BE ASCERTAINED BY A FIRST CLASS SURVEYOR APPOINTED BY THE SELLER. |
| QUALITY | : | FINAL AT LOADPORT AS PER FIRST CLASS SURVEYOR'S CERTIFICATE, APPOINTED BY SELLER AT THEIR EXPENSE. SELLER'S TO PROVIDE NON-RADIOACTIVTY CERTIFICATE UPON REQUEST, PHYTOSANITORY AND FITNESS CERTIFICATE ISSUED BY INDEPENDENT SURVEYOR |
| QUANTITY | : | 5% MORE OR LESS AT SELLER'S OPTION |
| INSURANCE | : | BUYER TO COVER INSURANCE |
| PORT OF DISCHARGE | : | PORT IIYICHEVSK |
| DISCHARGE | : | BUYER'S SHALL ENSURE TO: |

A)  GUARANTEE TO DISCHARGE VESSEL AT THE MINIMUM RATE OF 100 MT PER RUNNING HOURS – SUNDAYS AND HOLIDAYS INCLUDED.

B)  IT SHALL BE THE RECEIVER'S RESPONSIBILITY TO TAKE ALL CARE FOR THE PROMPT BERTHING OF THE VESSEL

C)  LAYTIME TO COUNT 6 HOURS AFTER THE NOTICE OR UPON BERTHING OF THE VESSEL, WHICHEVER IS EARLIER.

D)  DEMURRAGE IF ANY, RESULTING FROM NON-COMPLIANCE TO CONDITIONS OF CL (A) & (B) & (C) ABOVE CLAIMED AS PER THE CHARTER PARTY, BY THE OWNERS OF THE VESSEL SHALL BE TO THE RECEIVER'S ACCOUNT AND PAID WITHIN 7 WORKING DAYS OF THE CLAIM. THE DEMURRAGE SHALL BE GOVERNED BY THE CHARTER PARTY, NO DESPATCH.

2 | P a g e



**PACIFIC INTER-LINK SDN BHD**
31ˢᵗ FLOOR, MENARA DATO ONN', PUTRA WORLD TRADE CENTRE
45 JALAN TUN ISMAIL, 50480 KUALA LUMPUR
TEL: 603 – 4042 3933        FAX: 603 – 4041 3939 / 4042 8088

Form No: PIL/FM/006
Rev No: 0
Page 3 of 4

OTHER TERMS & CONDITIONS:

I)  EXTENSION OF SHIPMENT & ARBITRATION, RELATING TO THE TERMS OF THIS CONTRACT, WITH ARBITRATION IN LONDON, SHALL BE AS PER FOSFA-81, ABOUT WHICH THE PARTIES HAVE KNOWLEDGE AND NOTICE AND HEREBY ACCEPT.

II)  CHARTER PARTY BILL OF LADING IS ACCEPTABLE.

III)  LAST THREE CARGOES TO BE CLEAN AND UNLEADED AND LAST CARGO NOT ON THE FOSFA BANNED LIST.

IV)  IN CASE EITHER PARTY DEFAULTS ON THE EXECUTION OF THE CONTRACTUAL OBLIGATIONS UNDER THIS CONTRACT, THE AGGRIEVED PARTY SHALL BE ENTITLED TO RECOVER ANY OR ALL CONSEQUENTIAL DAMAGES (SUCH AS, BUT NOT LIMITED, TO COST OF MATERIAL, STORAGE FREIGHT, INTEREST AND OTHERS) FROM THE DEFAULT PARTY.

V)  THIS CONTRACT IS ONLY FOR PHYSICAL DELIVERY NO WASHOUT SHALL BE ALLOWED FOR THE CONTRACTED QUANTITIES.

VI)  NEITHER PARTY SHALL BEAR RESPONSIBILITY FOR DEFAULT OF THEIR OBLIGATIONS UNDER THE CONTRACT, IF IT IS A CONSEQUENCE OF FORCE-MAJEURE CIRCUMSTANCES,NAMELY: ACT OF GOD, STRIKES, LOCKOUTS,RIOTS,CIVIL COMMOTIONS, FIRES, NATURAL DISASTERS, MILITARY ACTIONS, EMBARGO, VESSEL ACCIDENT, GROUNDING OR ANY OTHER CAUSE COMPREHENDED BY THE TERM FORCE MAJEURE AT PORT/S OF LOADING OR ELSEWHERE PREVENTING TRANSPORT OF THE GOODS TO DISCHARGE PORT/S.

VII)  THE PARTY FOR WHOM FORCE-MAJEURE CIRCUMSTANCES OCCUR MUST IMMEDIATELY, WITHIN 72 HOURS OF THEIR OCCURRENCE, NOTIFY THE OTHER PARTY IN WRITING (EITHER BY FAX OR E-MAIL) AND SUPPLY DOCUMENTARY EVIDENCE.

VIII)  AFTER THE OCCURRENCE AND NOTIFICATION OF FORCE-MAJEURE CIRCUMSTANCES, THE PARTIES MUST IMMEDIATELY COORDINATE THE NECESSARY MEASURES TO OVERCOME SUCH FORCE-MAJEURE CIRCUMSTANCES.



**PACIFIC INTER-LINK SDN BHD**
31ˢᵗ FLOOR, MENARA DATO ONN', PUTRA WORLD TRADE CENTRE
45 JALAN TUN ISMAIL, 50480 KUALA LUMPUR
TEL: 603 – 4042 3933          FAX: 603 – 4041 3939 / 4042 8088

Form No: PIL/FM/006
Rev No: 0
Page 4 of 4

IX)     FAILURE OR DELAY IN NOTIFICATION OF THE
OCCURRENCE          OF          FORCE-MAJEURE
CIRCUMSTANCES SHALL BE CONSIDERED AS A
VIOLATION OF THE CONTRACT AND SHALL NOT
EXEMPT THE PARTY THAT HAS VIOLATED THE
CONTRACTUAL CONDITIONS FROM HIS LIABILITIES

**FOR SELLER**                                    **FOR BUYER**
**PACIFIC INTER-LINK SDN BHD**

NOTE: THE BUYERS SHALL ACKNOWLEDGE CONTENTS AND RECEIPT OF THIS DOCUMENT, BY THE
CLOSE OF THE WORKING HOURS , TODAY BY RETURNING THE SIGNED / SEALED
COPY OF THE SELLERS. IF THE SIGNED & SEALED COPY OF THE CONTRACT IS NOT RECEIVED AS
MENTIONED ABOVE, THE SELLER SHALL RESERVE THE RIGHT TO CANCEL THE CONTRACT.



**PACIFIC INTER-LINK SDN BHD**
31st FLOOR, MENARA DATO ONN', PUTRA WORLD TRADE CENTRE
45 JALAN TUN ISMAIL, 50480 KUALA LUMPUR
TEL: 603 – 4042 3933          FAX: 603 – 4041 3939 / 4042 8088

Form No: PIL/FM/006
Rev No: 0
Page 1 of 4

# SALES CONTRACT

TO :   EFKO FOOD INGREDIENTS LIMITED          DATE   : 07/09/2007
        RUSSIA                                 OUR REF: PIL/PO/0690/07

                                               AMENDMENT NO   :
                                               AMENDMENT DATE :

ATTN :                                          YOUR REF:

WE ARE PLEASED TO CONFIRM HAVING SOLD TO YOU THE FOLLOWING SUBJECT
TO OUR GENERAL TERMS AND CONDITIONS OF SALE AND AS PER HEREUNDER :

| S/NO. | DESCRIPTION OF GOOD(S) | QTY | UNIT PRICE (USD) | TOTAL VALUE (USD) |
|-------|------------------------|-----|------------------|-------------------|
|       | RBD PALM OLEIN IN BULK PMT CFR PORT ILYICHEVSK | 1,500 MTS | 809.00 | 1,213,500.00 |
|       |                        |     |                  |                   |

COUNTRY OF ORIGIN        :     MALAYSIA / INDONESIA

PORT OF LOADING          :     MALAYSIA / INDONESIA

SHIPMENT MONTH           :     FEBRUARY 2008

PACKING                  :     IN BULK

PAYMENT TERMS            :     100 % OF THE INVOICE VALUE BY TELEGRAPHIC TRANSFER
                               TO PIL'S BANK 15 DAYS BEFORE THE ARRIVAL OF
                               PERFORMING VESSEL TO THE DISCHARGE PORT
                               CARRYING THE CONTRACTED QUANTITIES.

BANK DETAILS             :     RHB BANK BERHAD

                               AddresS : KL TRADE SERVICES CENTRE,
                                         LEVEL 3,4, & 5, NO: 75, JALAN TUN H.S. LEE
                                         50000 KUALA LUMPUR.

                               Account No :  USD A/C NO: 61412900006928

                               Swift No   :   RHBBMYKL

                               Correspondent
                               Bank for USD A/C   : BANK OF NEW YORK

                               SWIFT              : IRVTUS3N

1 | P a g e



**PACIFIC INTER-LINK SDN BHD**
31st FLOOR, MENARA DATO ONN', PUTRA WORLD TRADE CENTRE
45 JALAN TUN ISMAIL, 50480 KUALA LUMPUR
TEL: 603 – 4042 3933          FAX: 603 – 4041 3939 / 4042 8088

Form No: PIL/FM/006
Rev No: 0
Page 2 of 4

| | | |
|---|---|---|
| SPECIFICATIONS | : | AS PER PORAM STANDARD SPECS (AT THE TIME OF SHIPMENT) |
| WEIGHT | : | AS FINAL AT LOAD PORT. FINAL WEIGHT AT LOAD PORT TO BE ASCERTAINED BY A FIRST CLASS SURVEYOR APPOINTED BY THE SELLER. |
| QUALITY | : | FINAL AT LOADPORT AS PER FIRST CLASS SURVEYOR'S CERTIFICATE, APPOINTED BY SELLER AT THEIR EXPENSE. SELLER'S TO PROVIDE NON-RADIOACTIVITY CERTIFICATE UPON REQUEST, PHYTOSANITORY AND FITNESS CERTIFICATE ISSUED BY INDEPENDENT SURVEYOR |
| QUANTITY | : | 5% MORE OR LESS AT SELLER'S OPTION |
| INSURANCE | : | BUYER TO COVER INSURANCE |
| PORT OF DISCHARGE | : | PORT IIYICHEVSK |
| DISCHARGE | : | BUYER'S SHALL ENSURE TO: |

A) GUARANTEE TO DISCHARGE VESSEL AT THE MINIMUM RATE OF 100 MT PER RUNNING HOURS – SUNDAYS AND HOLIDAYS INCLUDED.

B) IT SHALL BE THE RECEIVER'S RESPONSIBILITY TO TAKE ALL CARE FOR THE PROMPT BERTHING OF THE VESSEL

C) LAYTIME TO COUNT 6 HOURS AFTER THE NOTICE OR UPON BERTHING OF THE VESSEL, WHICHEVER IS EARLIER.

D) DEMURRAGE IF ANY, RESULTING FROM NON-COMPLIANCE TO CONDITIONS OF CL (A) & (B) & (C) ABOVE CLAIMED AS PER THE CHARTER PARTY, BY THE OWNERS OF THE VESSEL SHALL BE TO THE RECEIVER'S ACCOUNT AND PAID WITHIN 7 WORKING DAYS OF THE CLAIM. THE DEMURRAGE SHALL BE GOVERNED BY THE CHARTER PARTY, NO DESPATCH.



**PACIFIC INTER-LINK SDN BHD**
31ST FLOOR, MENARA DATO ONN', PUTRA WORLD TRADE CENTRE
45 JALAN TUN ISMAIL, 50480 KUALA LUMPUR
TEL: 603 – 4042 3933          FAX: 603 – 4041 3939 / 4042 8088

Form No: PIL/FM/006
Rev No: 0
Page 3 of 4

OTHER TERMS & CONDITIONS:

**I)** EXTENSION OF SHIPMENT & ARBITRATION, RELATING TO THE TERMS OF THIS CONTRACT, WITH ARBITRATION IN LONDON, SHALL BE AS PER FOSFA-81, ABOUT WHICH THE PARTIES HAVE KNOWLEDGE AND NOTICE AND HEREBY ACCEPT.

**II)** CHARTER PARTY BILL OF LADING IS ACCEPTABLE.

**III)** LAST THREE CARGOES TO BE CLEAN AND UNLEADED AND LAST CARGO NOT ON THE FOSFA BANNED LIST.

**IV)** IN CASE EITHER PARTY DEFAULTS ON THE EXECUTION OF THE CONTRACTUAL OBLIGATIONS UNDER THIS CONTRACT, THE AGGRIEVED PARTY SHALL BE ENTITLED TO RECOVER ANY OR ALL CONSEQUENTIAL DAMAGES (SUCH AS, BUT NOT LIMITED, TO COST OF MATERIAL, STORAGE FREIGHT, INTEREST AND OTHERS) FROM THE DEFAULT PARTY.

**V)** THIS CONTRACT IS ONLY FOR PHYSICAL DELIVERY NO WASHOUT SHALL BE ALLOWED FOR THE CONTRACTED QUANTITIES.

**VI)** NEITHER PARTY SHALL BEAR RESPONSIBILITY FOR DEFAULT OF THEIR OBLIGATIONS UNDER THE CONTRACT, IF IT IS A CONSEQUENCE OF FORCE-MAJEURE CIRCUMSTANCES, NAMELY: ACT OF GOD, STRIKES, LOCKOUTS, RIOTS, CIVIL COMMOTIONS, FIRES, NATURAL DISASTERS, MILITARY ACTIONS, EMBARGO, VESSEL ACCIDENT, GROUNDING OR ANY OTHER CAUSE COMPREHENDED BY THE TERM FORCE MAJEURE AT PORT/S OF LOADING OR ELSEWHERE PREVENTING TRANSPORT OF THE GOODS TO DISCHARGE PORT/S.

**VII)** THE PARTY FOR WHOM FORCE-MAJEURE CIRCUMSTANCES OCCUR MUST IMMEDIATELY, WITHIN 72 HOURS OF THEIR OCCURRENCE, NOTIFY THE OTHER PARTY IN WRITING (EITHER BY FAX OR E-MAIL) AND SUPPLY DOCUMENTARY EVIDENCE.

**VIII)** AFTER THE OCCURRENCE AND NOTIFICATION OF FORCE-MAJEURE CIRCUMSTANCES, THE PARTIES MUST IMMEDIATELY COORDINATE THE NECESSARY MEASURES TO OVERCOME SUCH FORCE-MAJEURE CIRCUMSTANCES.



**PACIFIC INTER-LINK SDN BHD**
31ˢᵗ FLOOR, MENARA DATO ONN', PUTRA WORLD TRADE CENTRE
45 JALAN TUN ISMAIL, 50480 KUALA LUMPUR
TEL: 603 – 4042 3933          FAX: 603 – 4041 3939 / 4042 8088

Form No: PIL/FM/006
Rev No: 0
Page 4 of 4

IX)    FAILURE OR DELAY IN NOTIFICATION OF THE
OCCURRENCE      OF      FORCE-MAJEURE
CIRCUMSTANCES SHALL BE CONSIDERED AS A
VIOLATION OF THE CONTRACT AND SHALL NOT
EXEMPT THE PARTY THAT HAS VIOLATED THE
CONTRACTUAL CONDITIONS FROM HIS LIABILITIES

**FOR SELLER**                                **FOR BUYER**
**PACIFIC INTER-LINK SDN BHD**

*Nakul Rastogi*

_____              _____

NOTE: THE BUYERS SHALL ACKNOWLEDGE CONTENTS AND RECEIPT OF THIS DOCUMENT, BY THE
CLOSE OF THE WORKING HOURS , TODAY BY RETURNING THE SIGNED / SEALED
COPY OF THE SELLERS. IF THE SIGNED & SEALED COPY OF THE CONTRACT IS NOT RECEIVED AS
MENTIONED ABOVE, THE SELLER SHALL RESERVE THE RIGHT TO CANCEL THE CONTRACT.

# PACIFIC INTER-LINK SDN BHD

31st FLOOR, MENARA DATO ONN, PUTRA WORLD TRADE CENTRE
45 JALAN TUN ISMAIL, 50480 KUALA LUMPUR
TEL: 603 – 4042 3933                         FAX: 603 – 4041 3939 / 4042 8088

Form No: PIL/FM/006
Rev No: 0
Page 1 of 4

## SALES CONTRACT

TO:  EFKO FOOD INGREDIENTS LIMITED
      RUSSIA

DATE  : 07/09/2007
OUR REF: PIL/PO/0691/07

AMENDMENT NO   :
AMENDMENT DATE :

ATTN  :

YOUR REF:

WE ARE PLEASED TO CONFIRM HAVING SOLD TO YOU THE FOLLOWING SUBJECT
TO OUR GENERAL TERMS AND CONDITIONS OF SALE AND AS PER HEREUNDER :

| S/NO. | DESCRIPTION OF GOOD(S) | QTY | UNIT PRICE (USD) | TOTAL VALUE (USD) |
|-------|------------------------|-----|------------------|-------------------|
|       | RBD PALM OLEIN IN BULK PMT CFR PORT ILYICHEVSK | 1,500 MTS | 809.00 | 1,213,500.00 |

| | | |
|---|---|---|
| COUNTRY OF ORIGIN | : | MALAYSIA / INDONESIA |
| PORT OF LOADING | : | MALAYSIA / INDONESIA |
| SHIPMENT MONTH | : | MARCH 2008 |
| PACKING | : | IN BULK |
| PAYMENT TERMS | : | 100 % OF THE INVOICE VALUE BY TELEGRAPHIC TRANSFER TO PIL'S BANK 15 DAYS BEFORE THE ARRIVAL OF PERFORMING VESSEL TO THE DISCHARGE PORT CARRYING THE CONTRACTED QUANTITIES. |
| BANK DETAILS | : | RHB BANK BERHAD |

Address : KL TRADE SERVICES CENTRE,
LEVEL 3,4, & 5, NO: 75, JALAN TUN H.S. LEE
50000 KUALA LUMPUR.

Account No :   USD A/C NO: 61412900006928

Swift No   :   RHBBMYKL

Correspondent
Bank for USD A/C     :   BANK OF NEW YORK

SWIFT         :   IRVTUS3N

1 | Page



# PACIFIC INTER-LINK SDN BHD
31ˢᵗ FLOOR, MENARA DATO ONN', PUTRA WORLD TRADE CENTRE
45 JALAN TUN ISMAIL, 50480 KUALA LUMPUR
TEL: 603 – 4042 3933          FAX: 603 – 4041 3939 / 4042 8088

Form No: PIL/FM/006
Rev No: 0
Page 2 of 4

| | | |
|---|---|---|
| **SPECIFICATIONS** | : | **AS PER PORAM STANDARD SPECS (AT THE TIME OF SHIPMENT)** |
| **WEIGHT** | : | **AS FINAL AT LOAD PORT. FINAL WEIGHT AT LOAD PORT TO BE ASCERTAINED BY A FIRST CLASS SURVEYOR APPOINTED BY THE SELLER.** |
| **QUALITY** | : | **FINAL AT LOADPORT AS PER FIRST CLASS SURVEYOR'S CERTIFICATE, APPOINTED BY SELLER AT THEIR EXPENSE. SELLER'S TO PROVIDE NON-RADIOACTIVTY CERTIFICATE UPON REQUEST, PHYTOSANITORY AND FITNESS CERTIFICATE ISSUED BY INDEPENDENT SURVEYOR** |
| **QUANTITY** | : | **5% MORE OR LESS AT SELLER'S OPTION** |
| **INSURANCE** | : | **BUYER TO COVER INSURANCE** |
| **PORT OF DISCHARGE** | : | **PORT IIYICHEVSK** |
| **DISCHARGE** | : | **BUYER'S SHALL ENSURE TO:** |

**A)** GUARANTEE TO DISCHARGE VESSEL AT THE MINIMUM RATE OF 100 MT PER RUNNING HOURS – SUNDAYS AND HOLIDAYS INCLUDED.

**B)** IT SHALL BE THE RECEIVER'S RESPONSIBILITY TO TAKE ALL CARE FOR THE PROMPT BERTHING OF THE VESSEL

**C)** LAYTIME TO COUNT 6 HOURS AFTER THE NOTICE OR UPON BERTHING OF THE VESSEL, WHICHEVER IS EARLIER.

**D)** DEMURRAGE IF ANY, RESULTING FROM NON-COMPLIANCE TO CONDITIONS OF CL (A) & (B) & (C) ABOVE CLAIMED AS PER THE CHARTER PARTY, BY THE OWNERS OF THE VESSEL SHALL BE TO THE RECEIVER'S ACCOUNT AND PAID WITHIN 7 WORKING DAYS OF THE CLAIM. THE DEMURRAGE SHALL BE GOVERNED BY THE CHARTER PARTY, NO DESPATCH.



## PACIFIC INTER-LINK SDN BHD
31ST FLOOR, MENARA DATO ONN, PUTRA WORLD TRADE CENTRE
45 JALAN TUN ISMAIL, 50480 KUALA LUMPUR
TEL: 603 – 4042 3933         FAX: 603 – 4041 3939 / 4042 8088

Form No: PIL/FM/006
Rev No: 0
Page 3 of 4

**OTHER TERMS & CONDITIONS:**

**I)** EXTENSION OF SHIPMENT & ARBITRATION, RELATING TO THE TERMS OF THIS CONTRACT, WITH ARBITRATION IN LONDON, SHALL BE AS PER FOSFA-81, ABOUT WHICH THE PARTIES HAVE KNOWLEDGE AND NOTICE AND HEREBY ACCEPT.

**II)** CHARTER PARTY BILL OF LADING IS ACCEPTABLE.

**III)** LAST THREE CARGOES TO BE CLEAN AND UNLEADED AND LAST CARGO NOT ON THE FOSFA BANNED LIST.

**IV)** IN CASE EITHER PARTY DEFAULTS ON THE EXECUTION OF THE CONTRACTUAL OBLIGATIONS UNDER THIS CONTRACT, THE AGGRIEVED PARTY SHALL BE ENTITLED TO RECOVER ANY OR ALL CONSEQUENTIAL DAMAGES (SUCH AS, BUT NOT LIMITED, TO COST OF MATERIAL, STORAGE FREIGHT, INTEREST AND OTHERS) FROM THE DEFAULT PARTY.

**V)** THIS CONTRACT IS ONLY FOR PHYSICAL DELIVERY NO WASHOUT SHALL BE ALLOWED FOR THE CONTRACTED QUANTITIES.

**VI)** NEITHER PARTY SHALL BEAR RESPONSIBILITY FOR DEFAULT OF THEIR OBLIGATIONS UNDER THE CONTRACT, IF IT IS A CONSEQUENCE OF FORCE-MAJEURE CIRCUMSTANCES,NAMELY: ACT OF GOD, STRIKES, LOCKOUTS,RIOTS,CIVIL COMMOTIONS, FIRES, NATURAL DISASTERS, MILITARY ACTIONS, EMBARGO, VESSEL ACCIDENT, GROUNDING OR ANY OTHER CAUSE COMPREHENDED BY THE TERM FORCE MAJEURE AT PORT/S OF LOADING OR ELSEWHERE PREVENTING TRANSPORT OF THE GOODS TO DISCHARGE PORT/S.

**VII)** THE PARTY FOR WHOM FORCE-MAJEURE CIRCUMSTANCES OCCUR MUST IMMEDIATELY, WITHIN 72 HOURS OF THEIR OCCURRENCE, NOTIFY THE OTHER PARTY IN WRITING (EITHER BY FAX OR E-MAIL) AND SUPPLY DOCUMENTARY EVIDENCE.

**VIII)** AFTER THE OCCURRENCE AND NOTIFICATION OF FORCE-MAJEURE CIRCUMSTANCES, THE PARTIES MUST IMMEDIATELY COORDINATE THE NECESSARY MEASURES TO OVERCOME SUCH FORCE-MAJEURE CIRCUMSTANCES.



**PACIFIC INTER-LINK SDN BHD**
31ˢᵗ FLOOR, MENARA DATO ONN, PUTRA WORLD TRADE CENTRE
45 JALAN TUN ISMAIL, 50480 KUALA LUMPUR
TEL: 603 – 4042 3933         FAX: 603 – 4041 3939 / 4042 8088

Form No: PIL/FM/006
Rev No: 0
Page 4 of 4

IX)    FAILURE OR DELAY IN NOTIFICATION OF THE
       OCCURRENCE         OF         FORCE-MAJEURE
       CIRCUMSTANCES SHALL BE CONSIDERED AS A
       VIOLATION OF THE CONTRACT AND SHALL NOT
       EXEMPT THE PARTY THAT HAS VIOLATED THE
       CONTRACTUAL CONDITIONS FROM HIS LIABILITIES

**FOR SELLER**                                    **FOR BUYER**
**PACIFIC INTER-LINK SDN BHD**

*Neakul Rastogi*

_____              _____

NOTE: THE BUYERS SHALL ACKNOWLEDGE CONTENTS AND RECEIPT OF THIS DOCUMENT, BY THE
      CLOSE OF THE WORKING HOURS , TODAY BY RETURNING THE SIGNED / SEALED
      COPY OF THE SELLERS. IF THE SIGNED & SEALED COPY OF THE CONTRACT IS NOT RECEIVED AS
      MENTIONED ABOVE, THE SELLER SHALL RESERVE THE RIGHT TO CANCEL THE CONTRACT.



# PACIFIC INTER-LINK SDN BHD
31ˢᵗ FLOOR, MENARA DATO ONN', PUTRA WORLD TRADE CENTRE
45 JALAN TUN ISMAIL, 50480 KUALA LUMPUR
TEL: 603 – 4042 3933          FAX: 603 – 4041 3939 / 4042 8088

Form No: PIL/FM/006
Rev No: 0
Page 1 of 4

# SALES CONTRACT

**TO :**   EFKO FOOD INGREDIENTS LIMITED
          RUSSIA

**DATE   :** 07/09/2007
**OUR REF:** PIL/PO/0692/07

**AMENDMENT NO   :**
**AMENDMENT DATE :**

**ATTN  :**

**YOUR REF:**

WE ARE PLEASED TO CONFIRM HAVING SOLD TO YOU THE FOLLOWING SUBJECT
TO OUR GENERAL TERMS AND CONDITIONS OF SALE AND AS PER HEREUNDER :

| S/NO. | DESCRIPTION OF GOOD(S) | QTY | UNIT PRICE (USD) | TOTAL VALUE (USD) |
|-------|------------------------|-----|------------------|-------------------|
|       | RBD PALM OLEIN IN BULK PMT CFR PORT ILYICHEVSK | 1,500 MTS | 804.00 | 1,206,000.00 |
|       |                        |     |                  |                   |

**COUNTRY OF ORIGIN**     :     MALAYSIA / INDONESIA

**PORT OF LOADING**     :     MALAYSIA / INDONESIA

**SHIPMENT MONTH**     :     APRIL 2008

**PACKING**     :     IN BULK

**PAYMENT TERMS**     :     100 % OF THE INVOICE VALUE BY TELEGRAPHIC TRANSFER
TO PIL'S BANK 15 DAYS BEFORE THE ARRIVAL OF
PERFORMING VESSEL TO THE DISCHARGE PORT
CARRYING THE CONTRACTED QUANTITIES.

**BANK DETAILS**     :     RHB BANK BERHAD

AddresS : KL TRADE SERVICES CENTRE,
LEVEL 3,4, & 5, NO: 75, JALAN TUN H.S. LEE
50000 KUALA LUMPUR.

**Account No** :   USD A/C NO: 61412900006928

**Swift No**   :   RHBBMYKL

**Correspondent**
**Bank for USD A/C**   : BANK OF NEW YORK

**SWIFT**          : IRVTUS3N

1 | P a g e



# PACIFIC INTER-LINK SDN BHD

31ST FLOOR, MENARA DATO ONN', PUTRA WORLD TRADE CENTRE
45 JALAN TUN ISMAIL, 50480 KUALA LUMPUR
TEL: 603 – 4042 3933          FAX: 603 – 4041 3939 / 4042 8088

Form No: PIL/FM/006
Rev No: 0
Page 2 of 4

| | | |
|---|---|---|
| **SPECIFICATIONS** | : | AS PER PORAM STANDARD SPECS (AT THE TIME OF SHIPMENT) |
| **WEIGHT** | : | AS FINAL AT LOAD PORT. FINAL WEIGHT AT LOAD PORT TO BE ASCERTAINED BY A FIRST CLASS SURVEYOR APPOINTED BY THE SELLER. |
| **QUALITY** | : | FINAL AT LOADPORT AS PER FIRST CLASS SURVEYOR'S CERTIFICATE, APPOINTED BY SELLER AT THEIR EXPENSE. SELLER'S TO PROVIDE NON-RADIOACTIVTY CERTIFICATE UPON REQUEST, PHYTOSANITORY AND FITNESS CERTIFICATE ISSUED BY INDEPENDENT SURVEYOR |
| **QUANTITY** | : | 5% MORE OR LESS AT SELLER'S OPTION |
| **INSURANCE** | : | BUYER TO COVER INSURANCE |
| **PORT OF DISCHARGE** | : | PORT IIYICHEVSK |
| **DISCHARGE** | : | BUYER'S SHALL ENSURE TO: |

A) GUARANTEE TO DISCHARGE VESSEL AT THE MINIMUM RATE OF 100 MT PER RUNNING HOURS – SUNDAYS AND HOLIDAYS INCLUDED.

B) IT SHALL BE THE RECEIVER'S RESPONSIBILITY TO TAKE ALL CARE FOR THE PROMPT BERTHING OF THE VESSEL

C) LAYTIME TO COUNT 6 HOURS AFTER THE NOTICE OR UPON BERTHING OF THE VESSEL, WHICHEVER IS EARLIER.

D) DEMURRAGE IF ANY, RESULTING FROM NON-COMPLIANCE TO CONDITIONS OF CL (A) & (B) & (C) ABOVE CLAIMED AS PER THE CHARTER PARTY, BY THE OWNERS OF THE VESSEL SHALL BE TO THE RECEIVER'S ACCOUNT AND PAID WITHIN 7 WORKING DAYS OF THE CLAIM. THE DEMURRAGE SHALL BE GOVERNED BY THE CHARTER PARTY, NO DESPATCH.



**PACIFIC INTER-LINK SDN BHD**
31st FLOOR, MENARA DATO ONN', PUTRA WORLD TRADE CENTRE
45 JALAN TUN ISMAIL, 50480 KUALA LUMPUR
TEL: 603 – 4042 3933          FAX: 603 – 4041 3939 / 4042 8088

Form No: PIL/FM/006
Rev No: 0
Page 3 of 4

OTHER TERMS & CONDITIONS:

I) EXTENSION OF SHIPMENT & ARBITRATION, RELATING TO THE TERMS OF THIS CONTRACT, WITH ARBITRATION IN LONDON, SHALL BE AS PER FOSFA-81, ABOUT WHICH THE PARTIES HAVE KNOWLEDGE AND NOTICE AND HEREBY ACCEPT.

II) CHARTER PARTY BILL OF LADING IS ACCEPTABLE.

III) LAST THREE CARGOES TO BE CLEAN AND UNLEADED AND LAST CARGO NOT ON THE FOSFA BANNED LIST.

IV) IN CASE EITHER PARTY DEFAULTS ON THE EXECUTION OF THE CONTRACTUAL OBLIGATIONS UNDER THIS CONTRACT, THE AGGRIEVED PARTY SHALL BE ENTITLED TO RECOVER ANY OR ALL CONSEQUENTIAL DAMAGES (SUCH AS, BUT NOT LIMITED, TO COST OF MATERIAL, STORAGE FREIGHT, INTEREST AND OTHERS) FROM THE DEFAULT PARTY.

V) THIS CONTRACT IS ONLY FOR PHYSICAL DELIVERY NO WASHOUT SHALL BE ALLOWED FOR THE CONTRACTED QUANTITIES.

VI) NEITHER PARTY SHALL BEAR RESPONSIBILITY FOR DEFAULT OF THEIR OBLIGATIONS UNDER THE CONTRACT, IF IT IS A CONSEQUENCE OF FORCE-MAJEURE CIRCUMSTANCES, NAMELY: ACT OF GOD, STRIKES, LOCKOUTS, RIOTS, CIVIL COMMOTIONS, FIRES, NATURAL DISASTERS, MILITARY ACTIONS, EMBARGO, VESSEL ACCIDENT, GROUNDING OR ANY OTHER CAUSE COMPREHENDED BY THE TERM FORCE MAJEURE AT PORT/S OF LOADING OR ELSEWHERE PREVENTING TRANSPORT OF THE GOODS TO DISCHARGE PORT/S.

VII) THE PARTY FOR WHOM FORCE-MAJEURE CIRCUMSTANCES OCCUR MUST IMMEDIATELY, WITHIN 72 HOURS OF THEIR OCCURRENCE, NOTIFY THE OTHER PARTY IN WRITING (EITHER BY FAX OR E-MAIL) AND SUPPLY DOCUMENTARY EVIDENCE.

VIII) AFTER THE OCCURRENCE AND NOTIFICATION OF FORCE-MAJEURE CIRCUMSTANCES, THE PARTIES MUST IMMEDIATELY COORDINATE THE NECESSARY MEASURES TO OVERCOME SUCH FORCE-MAJEURE CIRCUMSTANCES.



**PACIFIC INTER-LINK SDN BHD**
31ˢᵗ FLOOR, MENARA DATO ONN', PUTRA WORLD TRADE CENTRE
45 JALAN TUN ISMAIL, 50480 KUALA LUMPUR
TEL: 603 – 4042 3933          FAX: 603 – 4041 3939 / 4042 8088

Form No: PIL/FM/006
Rev No: 0
Page 4 of 4

IX)     FAILURE OR DELAY IN NOTIFICATION OF THE
OCCURRENCE          OF          FORCE-MAJEURE
CIRCUMSTANCES SHALL BE CONSIDERED AS A
VIOLATION OF THE CONTRACT AND SHALL NOT
EXEMPT THE PARTY THAT HAS VIOLATED THE
CONTRACTUAL CONDITIONS FROM HIS LIABILITIES

**FOR SELLER**                                      **FOR BUYER**
**PACIFIC INTER-LINK SDN BHD**

NOTE: THE BUYERS SHALL ACKNOWLEDGE CONTENTS AND RECEIPT OF THIS DOCUMENT, BY THE
CLOSE OF THE WORKING HOURS , TODAY BY RETURNING THE SIGNED / SEALED
COPY OF THE SELLERS. IF THE SIGNED & SEALED COPY OF THE CONTRACT IS NOT RECEIVED AS
MENTIONED ABOVE, THE SELLER SHALL RESERVE THE RIGHT TO CANCEL THE CONTRACT.



**PACIFIC INTER-LINK SDN BHD**
31ˢᵗ FLOOR, MENARA DATO ONN', PUTRA WORLD TRADE CENTRE
45 JALAN TUN ISMAIL, 50480 KUALA LUMPUR
TEL: 603 – 4042 3933          FAX: 603 – 4041 3939 / 4042 8088

Form No: PIL/FM/006
Rev No: 0
Page 1 of 4

# SALES CONTRACT

TO :  **EFKO FOOD INGREDIENTS LIMITED**
       **RUSSIA**

DATE   : 07/09/2007
OUR REF: PIL/PO/0693/07

AMENDMENT NO   :
AMENDMENT DATE :

ATTN  :

YOUR REF:

WE ARE PLEASED TO CONFIRM HAVING SOLD TO YOU THE FOLLOWING SUBJECT
TO OUR GENERAL TERMS AND CONDITIONS OF SALE AND AS PER HEREUNDER :

| S/NO. | DESCRIPTION OF GOOD(S) | QTY. | UNIT PRICE (USD) | TOTAL VALUE (USD) |
|-------|------------------------|------|------------------|-------------------|
| | **RBD PALM OLEIN IN BULK PMT CFR PORT ILYICHEVSK** | **1,500 MTS** | **804.00** | **1,206,000.00** |
| | | | | |

COUNTRY OF ORIGIN       :   **MALAYSIA / INDONESIA**

PORT OF LOADING         :   **MALAYSIA / INDONESIA**

SHIPMENT MONTH          :   **MAY  2008**

PACKING                 :   **IN BULK**

PAYMENT TERMS           :   **100 % OF THE INVOICE VALUE BY TELEGRAPHIC TRANSFER
                             TO PIL'S BANK 15 DAYS BEFORE THE ARRIVAL OF
                             PERFORMING VESSEL TO THE DISCHARGE PORT
                             CARRYING THE CONTRACTED QUANTITIES.**

BANK DETAILS            :   **RHB BANK BERHAD**

                            AddresS : **KL TRADE SERVICES CENTRE,
                                      LEVEL 3,4, & 5, NO: 75, JALAN TUN H.S. LEE
                                      50000 KUALA LUMPUR.**

                            Account No : **USD A/C NO: 61412900006928**

                            Swift No    :  **RHBBMYKL**

                            Correspondent
                            Bank for USD A/C    : **BANK OF NEW YORK**

                            SWIFT           : **IRVTUS3N**



# PACIFIC INTER-LINK SDN BHD
31ˢᵗ FLOOR, MENARA DATO ONN', PUTRA WORLD TRADE CENTRE
45 JALAN TUN ISMAIL, 50480 KUALA LUMPUR
TEL: 603 – 4042 3933          FAX: 603 – 4041 3939 / 4042 8088

Form No: PIL/FM/006
Rev No: 0
Page 2 of 4

| SPECIFICATIONS | : | AS PER PORAM STANDARD SPECS (AT THE TIME OF SHIPMENT) |
|---|---|---|
| WEIGHT | : | AS FINAL AT LOAD PORT. FINAL WEIGHT AT LOAD PORT TO BE ASCERTAINED BY A FIRST CLASS SURVEYOR APPOINTED BY THE SELLER. |
| QUALITY | : | FINAL AT LOADPORT AS PER FIRST CLASS SURVEYOR'S CERTIFICATE, APPOINTED BY SELLER AT THEIR EXPENSE. SELLER'S TO PROVIDE NON-RADIOACTIVTY CERTIFICATE  UPON REQUEST, PHYTOSANITORY AND FITNESS CERTIFICATE ISSUED BY INDEPENDENT SURVEYOR |
| QUANTITY | : | 5% MORE OR LESS AT SELLER'S OPTION |
| INSURANCE | : | BUYER TO COVER INSURANCE |
| PORT OF DISCHARGE | : | PORT IIYICHEVSK |
| DISCHARGE | : | BUYER'S SHALL ENSURE TO: |

A) GUARANTEE TO DISCHARGE VESSEL AT THE MINIMUM RATE OF 100 MT PER RUNNING HOURS – SUNDAYS AND HOLIDAYS INCLUDED.

B) IT SHALL BE THE RECEIVER'S RESPONSIBILITY TO TAKE ALL CARE FOR THE PROMPT BERTHING OF THE VESSEL

C) LAYTIME TO COUNT 6 HOURS AFTER THE NOTICE OR UPON BERTHING OF THE VESSEL, WHICHEVER IS EARLIER.

D) DEMURRAGE IF ANY, RESULTING FROM NON-COMPLIANCE TO CONDITIONS OF CL (A) & (B) & (C) ABOVE CLAIMED AS PER THE CHARTER PARTY, BY THE OWNERS OF THE VESSEL SHALL BE TO THE RECEIVER'S ACCOUNT AND PAID WITHIN 7 WORKING DAYS OF THE CLAIM. THE DEMURRAGE SHALL BE GOVERNED BY THE CHARTER PARTY, NO DESPATCH.



# PACIFIC INTER-LINK SDN BHD

31ST FLOOR, MENARA DATO ONN', PUTRA WORLD TRADE CENTRE
45 JALAN TUN ISMAIL, 50480 KUALA LUMPUR
TEL: 603 – 4042 3933          FAX: 603 – 4041 3939 / 4042 8088

Form No: PIL/FM/006
Rev No: 0
Page 3 of 4

**OTHER TERMS & CONDITIONS:**

I)  EXTENSION OF SHIPMENT & ARBITRATION, RELATING TO THE TERMS OF THIS CONTRACT, WITH ARBITRATION IN LONDON, SHALL BE AS PER FOSFA-81, ABOUT WHICH THE PARTIES HAVE KNOWLEDGE AND NOTICE AND HEREBY ACCEPT.

II)  CHARTER PARTY BILL OF LADING IS ACCEPTABLE.

III)  LAST THREE CARGOES TO BE CLEAN AND UNLEADED AND LAST CARGO NOT ON THE FOSFA BANNED LIST.

IV)  IN CASE EITHER PARTY DEFAULTS ON THE EXECUTION OF THE CONTRACTUAL OBLIGATIONS UNDER THIS CONTRACT, THE AGGRIEVED PARTY SHALL BE ENTITLED TO RECOVER ANY OR ALL CONSEQUENTIAL DAMAGES (SUCH AS, BUT NOT LIMITED, TO COST OF MATERIAL, STORAGE FREIGHT, INTEREST AND OTHERS) FROM THE DEFAULT PARTY.

V)  THIS CONTRACT IS ONLY FOR PHYSICAL DELIVERY NO WASHOUT SHALL BE ALLOWED FOR THE CONTRACTED QUANTITIES.

VI)  NEITHER PARTY SHALL BEAR RESPONSIBILITY FOR DEFAULT OF THEIR OBLIGATIONS UNDER THE CONTRACT, IF IT IS A CONSEQUENCE OF FORCE-MAJEURE CIRCUMSTANCES,NAMELY: ACT OF GOD, STRIKES, LOCKOUTS,RIOTS,CIVIL COMMOTIONS, FIRES, NATURAL DISASTERS, MILITARY ACTIONS, EMBARGO, VESSEL ACCIDENT, GROUNDING OR ANY OTHER CAUSE COMPREHENDED BY THE TERM FORCE MAJEURE AT PORT/S OF LOADING OR ELSEWHERE PREVENTING TRANSPORT OF THE GOODS TO DISCHARGE PORT/S.

VII)  THE PARTY FOR WHOM FORCE-MAJEURE CIRCUMSTANCES OCCUR MUST IMMEDIATELY, WITHIN 72 HOURS OF THEIR OCCURRENCE, NOTIFY THE OTHER PARTY IN WRITING (EITHER BY FAX OR E-MAIL) AND SUPPLY DOCUMENTARY EVIDENCE.

VIII)  AFTER THE OCCURRENCE AND NOTIFICATION OF FORCE-MAJEURE CIRCUMSTANCES, THE PARTIES MUST IMMEDIATELY COORDINATE THE NECESSARY MEASURES TO OVERCOME SUCH FORCE-MAJEURE CIRCUMSTANCES.



**PACIFIC INTER-LINK SDN BHD**
31st FLOOR, MENARA DATO ONN', PUTRA WORLD TRADE CENTRE
45 JALAN TUN ISMAIL, 50480 KUALA LUMPUR
TEL: 603 – 4042 3933          FAX: 603 – 4041 3939 / 4042 8088

Form No: PIL/FM/006
Rev No: 0
Page 4 of 4

IX)    FAILURE OR DELAY IN NOTIFICATION OF THE OCCURRENCE OF FORCE-MAJEURE CIRCUMSTANCES SHALL BE CONSIDERED AS A VIOLATION OF THE CONTRACT AND SHALL NOT EXEMPT THE PARTY THAT HAS VIOLATED THE CONTRACTUAL CONDITIONS FROM HIS LIABILITIES

**FOR SELLER**                                    **FOR BUYER**
**PACIFIC INTER-LINK SDN BHD**

Nakul Rastogi

_____                    _____

NOTE: THE BUYERS SHALL ACKNOWLEDGE CONTENTS AND RECEIPT OF THIS DOCUMENT, BY THE CLOSE OF THE WORKING HOURS , TODAY BY RETURNING THE SIGNED / SEALED COPY OF THE SELLERS. IF THE SIGNED & SEALED COPY OF THE CONTRACT IS NOT RECEIVED AS MENTIONED ABOVE, THE SELLER SHALL RESERVE THE RIGHT TO CANCEL THE CONTRACT.



**PACIFIC INTER-LINK SDN BHD**
31st FLOOR, MENARA DATO ONN', PUTRA WORLD TRADE CENTRE
45 JALAN TUN ISMAIL, 50480 KUALA LUMPUR
TEL: 603 – 4042 3933          FAX: 603 – 4041 3939 / 4042 8088

Form No: PIL/FM/006
Rev No: 0
Page 1 of 4

# SALES CONTRACT

TO :  EFKO FOOD INGREDIENTS LIMITED
      RUSSIA

DATE   : 07/09/2007
OUR REF: PIL/PO/0694/07

AMENDMENT NO    :
AMENDMENT DATE :

ATTN  :                                     YOUR REF:

WE ARE PLEASED TO CONFIRM HAVING SOLD TO YOU THE FOLLOWING SUBJECT
TO OUR GENERAL TERMS AND CONDITIONS OF SALE AND AS PER HEREUNDER :

| S/NO. | DESCRIPTION OF GOOD(S) | QTY. | UNIT PRICE (USD) | TOTAL VALUE (USD) |
|---|---|---|---|---|
| | RBD PALM OLEIN IN BULK PMT CFR PORT ILYICHEVSK | 1,500 MTS | 804.00 | 1,206,000.00 |
| | | | | |

COUNTRY OF ORIGIN        :     MALAYSIA / INDONESIA

PORT OF LOADING          :     MALAYSIA / INDONESIA

SHIPMENT MONTH           :     JUNE 2008

PACKING                  :     IN BULK

PAYMENT TERMS            :     100 % OF THE INVOICE VALUE BY TELEGRAPHIC TRANSFER
                               TO PIL'S BANK 15 DAYS BEFORE THE ARRIVAL OF
                               PERFORMING  VESSEL  TO  THE  DISCHARGE  PORT
                               CARRYING THE CONTRACTED QUANTITIES.

BANK DETAILS             :     RHB BANK BERHAD

                               AddresS : KL TRADE SERVICES CENTRE,
                                         LEVEL 3,4, & 5, NO: 75, JALAN TUN H.S. LEE
                                         50000 KUALA LUMPUR.

                               Account No :   USD A/C NO: 61412900006928

                               Swift No    :   RHBBMYKL

                               Correspondent
                               Bank for USD A/C   : BANK OF NEW YORK

                               SWIFT              : IRVTUS3N

1 | P a g e



# PACIFIC INTER-LINK SDN BHD

31ˢᵗ FLOOR, MENARA DATO ONN', PUTRA WORLD TRADE CENTRE
45 JALAN TUN ISMAIL, 50480 KUALA LUMPUR
TEL: 603 – 4042 3933          FAX: 603 – 4041 3939 / 4042 8088

Form No: PIL/FM/006
Rev No: 0
Page 2 of 4

| | | |
|---|---|---|
| **SPECIFICATIONS** | : | AS PER PORAM STANDARD SPECS (AT THE TIME OF SHIPMENT) |
| **WEIGHT** | : | AS FINAL AT LOAD PORT. FINAL WEIGHT AT LOAD PORT TO BE ASCERTAINED BY A FIRST CLASS SURVEYOR APPOINTED BY THE SELLER. |
| **QUALITY** | : | FINAL AT LOADPORT AS PER FIRST CLASS SURVEYOR'S CERTIFICATE, APPOINTED BY SELLER AT THEIR EXPENSE. SELLER'S TO PROVIDE NON-RADIOACTIVTY CERTIFICATE UPON REQUEST, PHYTOSANITORY AND FITNESS CERTIFICATE ISSUED BY INDEPENDENT SURVEYOR |
| **QUANTITY** | : | 5% MORE OR LESS AT SELLER'S OPTION |
| **INSURANCE** | : | BUYER TO COVER INSURANCE |
| **PORT OF DISCHARGE** | : | PORT IIYICHEVSK |
| **DISCHARGE** | : | BUYER'S SHALL ENSURE TO: |

A) GUARANTEE TO DISCHARGE VESSEL AT THE MINIMUM RATE OF 100 MT PER RUNNING HOURS – SUNDAYS AND HOLIDAYS INCLUDED.

B) IT SHALL BE THE RECEIVER'S RESPONSIBILITY TO TAKE ALL CARE FOR THE PROMPT BERTHING OF THE VESSEL

C) LAYTIME TO COUNT 6 HOURS AFTER THE NOTICE OR UPON BERTHING OF THE VESSEL, WHICHEVER IS EARLIER.

D) DEMURRAGE IF ANY, RESULTING FROM NON-COMPLIANCE TO CONDITIONS OF CL (A) & (B) & (C) ABOVE CLAIMED AS PER THE CHARTER PARTY, BY THE OWNERS OF THE VESSEL SHALL BE TO THE RECEIVER'S ACCOUNT AND PAID WITHIN 7 WORKING DAYS OF THE CLAIM. THE DEMURRAGE SHALL BE GOVERNED BY THE CHARTER PARTY, NO DESPATCH.



# PACIFIC INTER-LINK SDN BHD

31ˢᵗ FLOOR, MENARA DATO ONN', PUTRA WORLD TRADE CENTRE
45 JALAN TUN ISMAIL, 50480 KUALA LUMPUR
TEL: 603 – 4042 3933          FAX: 603 – 4041 3939 / 4042 8088

Form No: PIL/FM/006
Rev No: 0
Page 3 of 4

**OTHER TERMS & CONDITIONS:**

I)   EXTENSION OF SHIPMENT & ARBITRATION, RELATING TO THE TERMS OF THIS CONTRACT, WITH ARBITRATION IN LONDON, SHALL BE AS PER FOSFA-81, ABOUT WHICH THE PARTIES HAVE KNOWLEDGE AND NOTICE AND HEREBY ACCEPT.

II)  CHARTER PARTY BILL OF LADING IS ACCEPTABLE.

III) LAST THREE CARGOES TO BE CLEAN AND UNLEADED AND LAST CARGO NOT ON THE FOSFA BANNED LIST.

IV)  IN CASE EITHER PARTY DEFAULTS ON THE EXECUTION OF THE CONTRACTUAL OBLIGATIONS UNDER THIS CONTRACT, THE AGGRIEVED PARTY SHALL BE ENTITLED TO RECOVER ANY OR ALL CONSEQUENTIAL DAMAGES (SUCH AS, BUT NOT LIMITED, TO COST OF MATERIAL, STORAGE FREIGHT, INTEREST AND OTHERS) FROM THE DEFAULT PARTY.

V)   THIS CONTRACT IS ONLY FOR PHYSICAL DELIVERY NO WASHOUT SHALL BE ALLOWED FOR THE CONTRACTED QUANTITIES.

VI)  NEITHER PARTY SHALL BEAR RESPONSIBILITY FOR DEFAULT OF THEIR OBLIGATIONS UNDER THE CONTRACT, IF IT IS A CONSEQUENCE OF FORCE-MAJEURE CIRCUMSTANCES,NAMELY: ACT OF GOD, STRIKES, LOCKOUTS,RIOTS,CIVIL COMMOTIONS, FIRES, NATURAL DISASTERS, MILITARY ACTIONS, EMBARGO, VESSEL ACCIDENT, GROUNDING OR ANY OTHER CAUSE COMPREHENDED BY THE TERM FORCE MAJEURE AT PORT/S OF LOADING OR ELSEWHERE PREVENTING TRANSPORT OF THE GOODS TO DISCHARGE PORT/S.

VII) THE PARTY FOR WHOM FORCE-MAJEURE CIRCUMSTANCES OCCUR MUST IMMEDIATELY, WITHIN 72 HOURS OF THEIR OCCURRENCE, NOTIFY THE OTHER PARTY IN WRITING (EITHER BY FAX OR E-MAIL) AND SUPPLY DOCUMENTARY EVIDENCE.

VIII) AFTER THE OCCURRENCE AND NOTIFICATION OF FORCE-MAJEURE CIRCUMSTANCES, THE PARTIES MUST IMMEDIATELY COORDINATE THE NECESSARY MEASURES TO OVERCOME SUCH FORCE-MAJEURE CIRCUMSTANCES.



# PACIFIC INTER-LINK SDN BHD

31st FLOOR, MENARA DATO ONN', PUTRA WORLD TRADE CENTRE
45 JALAN TUN ISMAIL, 50480 KUALA LUMPUR
TEL: 603 – 4042 3933        FAX: 603 – 4041 3939 / 4042 8088

Form No: PIL/FM/006
Rev No: 0
Page 4 of 4

IX)    FAILURE OR DELAY IN NOTIFICATION OF THE OCCURRENCE OF FORCE-MAJEURE CIRCUMSTANCES SHALL BE CONSIDERED AS A VIOLATION OF THE CONTRACT AND SHALL NOT EXEMPT THE PARTY THAT HAS VIOLATED THE CONTRACTUAL CONDITIONS FROM HIS LIABILITIES

**FOR SELLER**                                    **FOR BUYER**
**PACIFIC INTER-LINK SDN BHD**

Nakul Rastogi

NOTE: THE BUYERS SHALL ACKNOWLEDGE CONTENTS AND RECEIPT OF THIS DOCUMENT, BY THE CLOSE OF THE WORKING HOURS , TODAY BY RETURNING THE SIGNED / SEALED COPY OF THE SELLERS. IF THE SIGNED & SEALED COPY OF THE CONTRACT IS NOT RECEIVED AS MENTIONED ABOVE, THE SELLER SHALL RESERVE THE RIGHT TO CANCEL THE CONTRACT.

**KAHN DECLARATION**

**EXHIBIT 5**

Transcript of Oral Argument.txt

1

6A57SHAM
1  UNITED STATES DISTRICT COURT
1  SOUTHERN DISTRICT OF NEW YORK
2  --------------------------------x
2
3  SHANGHAI SINOM IMPORT AND EXPORT,
3
4                Plaintiff,
4
5       v.                              06 Civ. 4711
5
6  EXFIN (INDIA) MINERAL ORE CO.,
6  PVT. LTD.,
7
7                Defendant.
8
8  -----------------------------x
9
9                                  October 5, 2006
10                                 4:30 p.m.
10
11 Before:
11
12                  HON. GERARD E. LYNCH
12
13                                 District Judge
13
14                     APPEARANCES
14
15 TISDALE & LENNON, LLC
15      Attorneys for Plaintiff
16 BY:  LAUREN COZZOLINO DAVIES
16      CHARLES E. MURPHY
17
17 DeORCHIS WIENER & PARTNERS, LLP
18      Attorneys for Defendant
18 BY:  JOHN ORZEL
19      SUBIR MAJUMDAR
20
20
21
22
23
24
25

               SOUTHERN DISTRICT REPORTERS, P.C.
                      (212) 805-0300

                                                2

6A57SHAM
1          (Case called)
2          (In open court)
3          MS. DAVIES:  Good afternoon.  Lauren Davies for the
4  plaintiff.  And this is Charles Murphy of our office.
5          THE COURT:  Good afternoon.
6          MR. ORZEL:  Good afternoon, your Honor.  John Orzel
7  from DeOrchis Wiener & Partners, for the defendant.  With me is
8  Mr. Subir Majumdar, who is Indian counsel for us.
9          THE COURT:  OK.  Welcome Mr. Majumdar, and good
10 afternoon, Mr. Orzel.
11         All right.  We are here on the defendant's application
12 to vacate an order of maritime attachment.  The essential
13 argument of the defendant is that this is not a maritime

                        Page 1

Transcript of Oral Argument.txt
14  contract and, therefore, there is no admiralty jurisdiction,
15  and, therefore, the rules permitting the attachment have no
16  application and indeed the case should be dismissed for lack of
17  jurisdiction.
18          Do I have that right, Mr. Orzel?
19          MR. ORZEL:  That is correct, your Honor.
20          THE COURT:  OK.  I have read the parties' submissions,
21  and I have also read a number of the critical precedents that
22  are cited.  Let me see if I understand the facts correctly,
23  Ms. Davies.  This is a contract for the sale of iron ore from a
24  company in India to your client which is a company in China.
25          MS. DAVIES:  That's correct, your Honor.
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

                                                                3

6A57SHAM
 1          THE COURT:  OK.  And the contract, which is in the
 2  record, has certain provisions that specifically relate to a
 3  requirement that the goods will be shipped by sea.
 4          MS. DAVIES:  That is correct.
 5          THE COURT:  OK.  Is there actually something that
 6  explicitly says "And, by the way, you have to send this by
 7  water."  I take it there is no question it would be sent by
 8  water.  We are talking about tons of iron ore; it's not going
 9  to fly or go by truck or something.
10          MS. DAVIES:  The provisions, specifically ten through
11  13, and several others, relate specifically to the nomination
12  of a vessel.
13          THE COURT:  They all assume.  These provisions assume
14  it's going to be by sea, but I just didn't see something that
15  said that you have to ship by sea.
16          MS. DAVIES:  I would presume that by nominating or
17  requiring the nomination of a vessel it would need to be by
18  water.
19          THE COURT:  Yes.  Whether there is such an explicit
20  provision or not, it's clear that the contract contemplates
21  transportation by sea.
22          And then there are all of these provisions that
23  specifically relate to nominating a particular vessel, things
24  like demurrage and lay time, and different conditions that
25  would apply to such a shipment by sea.
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

                                                                4

6A57SHAM
 1          Now, I take it the plaintiff does not contend that the
 2  defendant breached any of those specific maritime conditions.
 3          MS. DAVIES:  Actually, your Honor, we do.  I mean not
 4  in terms of specifically breaching, say, clause 10 or clause
 5  11, but these clauses taken together are maritime provisions
 6  for the delivery of the iron ore from India to China.
 7          THE COURT:  But it got to China.  It didn't wash
 8  overboard somewhere along the way.
 9          MS. DAVIES:  No, it did not.  But we did not receive
10  the entirety of the cargo at the discharge port in China.
11          THE COURT:  Right.  But that's because -- I mean tell
12  me if there is a dispute about this, but I thought it was
13  undisputed that the iron ore got to China, actually got off the
14  ship and then got seized by some other party due to some other
15  litigation.
16          MS. DAVIES:  Yes, that is correct.  There is not a
17  dispute to the seizure.  Just to clarify that a bit, when the
18  vessel arrived at the port in China, the day prior to the
                            Page 2

Transcript of Oral Argument.txt
19   vessel's arrival a nonparty named the Red Horse had effected a
20   maritime attachment against the cargo.
21              THE COURT:  Ah, live by the sword and die by the
22   sword.
23              MS. DAVIES:  Yes.
24              THE COURT:  But the basic breach of contract action is
25   pretty simple:  You bought something, you paid for it, and you
                  SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300
                                                                    5
6A57SHAM
1    didn't get it, or you didn't get all of it in a timely way as
2    required by the contract.  Right?
3              MS. DAVIES:  I would agree with that, yes.
4              THE COURT:  And whatever the defendant failed to do --
5    which I think essentially is simply that they failed in the
6    basic provision of delivering the goods to you -- they didn't
7    fail to comply with any of those specifically maritime
8    requirements in the contract.
9              MS. DAVIES:  I would respectfully disagree on the same
10   basis, because they did fail to deliver the cargo, and in a --
11             THE COURT:  Well, I hear that, but that would have
12   been true -- I mean suppose, I don't know, somebody else came
13   along and offered them a higher price, and the defendant sold
14   the iron ore that was destined for you to another company in
15   India, and it never got on a boat at all, they just send you a
16   cable saying, sorry, we found a better price, better luck next
17   time, we're not sending anything.  Right?  That would have been
18   a breach of this contract too, right?
19             MS. DAVIES:  Yes, I agree.
20             THE COURT:  And that wouldn't have had anything to do
21   with boats.
22             MS. DAVIES:  I agree, because that would have been
23   before the maritime portion of this contract, meaning the ocean
24   transportation for delivery had been effected.
25             THE COURT:  But the ocean transportation has been
                  SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300
                                                                    6
6A57SHAM
1    effected, right, successfully.  It gets to Shanghi or wherever
2    it's going.
3              MS. DAVIES:  Yes, it does get there.
4              THE COURT:  OK.  And lastly, this is clearly not a
5    contract between any kind of party and a vessel owner or
6    transporter of goods of any sort.  Right?
7              MS. DAVIES:  Well, what do you mean by a transporter
8    of goods?
9              THE COURT:  Well, am I correct that there -- maybe you
10   don't know from where your client sits -- but the defendant
11   doesn't own any ships, I take it.
12             MS. DAVIES:  That's correct.
13             THE COURT:  And the contract contemplates that they're
14   going to enter a contract with somebody who does own ships in
15   order for that -- in order to charter a boat, to take the cargo
16   to China.
17             MS. DAVIES:  That is true, but what the defendant does
18   do is they act as somebody who would have been a ship owner in
19   a traditional charter party by setting forth the requirements
20   that you see in the contract:  The type of vessel that needs to
21   be demurraged, lay time, all those provisions.
22             THE COURT:  What is the commercial purpose of that?
23   Is this something that matters?  And, if so, to whom?
                            Page 3

Transcript of Oral Argument.txt
24          In other words, is there a reason why the purchaser in
25     a contract of this kind cares about these various maritime
                    SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
                                                                        7

6A57SHAM
1      terms?
2              MS. DAVIES:  My opinion would be that both parties in
3      this instance want to see -- especially the buyer -- want to
4      see the cargo arrive safely and in the condition in which it's
5      supposed to be.  This is iron ore, so the common issues with
6      that would be salt water, rust, corrosion of the vessel.  It
7      could be improperly loaded, improperly stowed.  The vessel
8      could be of an improper type.  So those types of things seem to
9      be what they were contemplating.
10             THE COURT:  Mr. Orzel, maybe you can give me a
11     perspective on this.  Isn't at least some part of this contract
12     one in which your client undertakes a role similar to that of
13     at least some party -- I'm not sure what kind of party -- in a
14     typical maritime transaction?  I'm not sure whether it's a
15     broker or an MVOCC.  Somebody out there is in the business of
16     chartering boats and entering these specifications, and the
17     seller in this contract undertakes that role, don't they?
18             MR. ORZEL:  I don't believe so, your Honor.  At best I
19     think we undertake, or these provisions are prefatory to our
20     entering into a maritime contract.
21             The provision such as the lay time, the dispatch, even
22     the vessel itself, they all have commercial import.  Lay time
23     provisions, because the buyer is the one who would be
24     responsible for paying for lay time.  They want to know what
25     that is beforehand, so that's why that type of provision would
                    SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
                                                                        8

6A57SHAM
1      be in the contract.
2              The provision about giving them the right to review
3      the vessel before we enter into the charter party, it's because
4      if the vessel is more than 20 years old, they probably couldn't
5      get cargo insurance for it, and under the contract it's their
6      obligation to provide the cargo insurance.
7              The risk of loss passed when we loaded the vessel.
8              THE COURT:  The risk of loss passed when you loaded
9      the vessel, meaning if -- well, I take it there is some dispute
10     about that, isn't there?
11             MR. ORZEL:  No, it's clause 17, which is very clear.
12     Risk of loss passes when the cargo leaves our discharge chute
13     at the load port.  So if the vessel sank, it's their loss, not
14     ours.
15             THE COURT:  And they would have to go after the --
16             MR. ORZEL:  Ship owner.
17             THE COURT:  -- after the ship for that --
18             MR. ORZEL:  Correct.
19             THE COURT:  -- for that recovery.
20             MR. ORZEL:  So at best this lays the groundwork for us
21     entering into the charter party, which we did.  But in and of
22     itself it's not a contract of carriage.
23             THE COURT:  Yes, and you then did enter into a
24     contract of carriage with somebody.
25             MR. ORZEL:  Correct.
                    SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
                                                                        9

Transcript of Oral Argument.txt
6A57SHAM
1       THE COURT:  And you also agree that that contract was
2  successfully completed.
3              MR. ORZEL:  Correct.
4       THE COURT:  And the goods get offloaded, in fact.
5              MR. ORZEL:  That is correct.
6       THE COURT:  All right.  And at that point there is
7  other attachment.
8              MR. ORZEL:  Right.  And just as a point of clarity,
9  it's the plaintiff's responsibility in China to discharge the
10 vessel.
11             THE COURT:  Right, that's provided specifically under
12 the contract.
13             MR. ORZEL:  Correct.
14             THE COURT:  All right.  I think I'm prepared to rule.
15 The defendant moves to vacate an order of maritime attachment,
16 arguing that admiralty jurisdiction does not exist in this case
17 since the underlying contract that's the basis of plaintiff's
18 claims is not a maritime contract.
19             It is undisputed that the contract is primarily a
20 contract for the sale of goods, specifically iron ore, from an
21 Indian company to another in China.
22             The contract, in addition to various provisions
23 typical of such a sales contract, also includes maritime
24 provisions requiring the ore implicitly to be shipped by sea
25 and specifying certain requirements regarding the conditions
                  SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300

                                                                    10
6A57SHAM
1  for such shipment.
2              It is clear, however, that the contract is not a
3  contract for maritime transportation; rather, the contract
4  contemplates that the defendant will enter such a contract with
5  a suitable ship owner.
6              There is no allegation here that defendant breached
7  the specifically maritime aspects of the contract.  It provided
8  for appropriate ship transportation in accordance with the
9  terms of the contract, and, in fact, the shipment of ore was
10 delivered intact to China as the contract required.  However,
11 it was not delivered to the plaintiff purchaser, because the
12 ore was attached as part of an unrelated lawsuit between the
13 defendant and another Chinese company.  For present purposes
14 there is no need to address the nature or merits of that
15 dispute or the merits of plaintiff's claims of breach of
16 contract.
17             Suffice to say, that plaintiff has sued because it did
18 not receive the goods, or all of them, in a timely manner, and
19 it seeks various items of damages for such nondelivery.
20             On this record, both common sense and long-established
21 case law suggests that this is a nonmaritime dispute between a
22 purchaser and seller over the alleged failure to deliver
23 purchased goods.  I note that that dispute has no connection to
24 the United States whatsoever, and there is apparently no basis
25 for in personam jurisdiction over the defendant in this court
                  SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300

                                                                    11
6A57SHAM
1  or for subject matter jurisdiction in the federal courts on any
2  nonadmiralty basis.  This case is only here because of the
3  liberal provisions for attachment and in rem jurisdiction in
4  admiralty cases.
                          Page 5

Transcript of Oral Argument.txt

5       The Fifth Circuit's decision in Lucky Gold Star v.
6   Phibro Energy, 958 F.2d 58 (1992), states the long-established
7   law on this subject, noting that a contract for a land-based
8   sale of goods is not maritime merely because the seller agrees
9   to ship the goods by sea to the buyer.  Citing its earlier
10  decision in Loredo Offshore Contractors v. Hunt Oil Company,
11  754 F.2d 1223, 1231-32 (Fifth Circuit 1985), the court noted
12  that "It is fundamental that the mere inclusion of maritime
13  obligations in a mixed contract does not without more bring
14  nonmaritime obligations within the pale of admiralty law."
15       Our Court of Appeals in Phypin Steel Company v. Asoma
16  Corporation, 215 F.3d 273, 277 (2d Cir. 2000), drew a similar
17  distinction, noting that "Admiralty jurisdiction extends only
18  to wholly maritime contracts or severable maritime portions of
19  mixed contracts."
20       Contrary to plaintiff's argument, Phypin does not
21  support its position.  Although the mixed contract there did
22  indeed permit admiralty jurisdiction, that was because the
23  action there arose specifically under the bill of lading, which
24  the court found to be a maritime contract in itself.
25       As the court noted, Phypin's in rem claim "arises
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

                                                                    12

6A57SHAM
1   under and is based on their purported entitlement to the bill
2   of lading" as opposed to the cargo itself.  That is not so in
3   this case.
4        The plaintiff argues, however, that these cases have
5   been superseded by the Supreme Court's more recent decision in
6   Norfolk Southern Railroad v. Kirby, 543 U.S. 12 (2004).  It's
7   true that the Supreme Court there rather expanded the notion of
8   a maritime contract and declined to treat a contract specifying
9   both land and sea shipment as composed of severable land-based
10  and maritime components, but the contract in Norfolk Southern
11  was dramatically different in nature from the one here.
12       In Norfolk Southern the court found the contract to be
13  maritime in nature because its primary objective was to
14  accomplish the transportation of goods by sea from Australia to
15  the United States.  The contract -- unlike the contract here --
16  was specifically a contract of carriage, and the fact that the
17  last leg of the journey was to have been by rail did not
18  undermine the fact that the principal objective of the contract
19  was maritime commerce.
20       The reasons why the court took the approach that it
21  did to the contract in Norfolk Southern are instructive and are
22  highly distinguishable from any considerations applicable here.
23       As the Supreme Court noted, maritime commerce has
24  evolved along with the nature of transportation.  Given the
25  container revolution, maritime transportation is often
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

                                                                    13

6A57SHAM
1   inseparable from land-based aspects of transportation in a new
2   era in which cargo owners can contract for transportation
3   across oceans to inland destinations in a single transaction.
4   I am here paraphrasing very closely the words of the Supreme
5   Court which can be found at 543 U.S. 24-25.
6        These conditions and this change in the nature of
7   maritime commerce critical to the decision in Norfolk Southern
8   have no bearing here.  What we have here is a contract of the
9   sort perfectly familiar long before the advent of container
                        Page 6

Transcript of Oral Argument.txt

10   ships and integrated transportation systems.  The purchase of
11   goods by a buyer in one country from a seller in another, with
12   a proviso that the goods are to be sent by sea, and with some
13   incidental provisions bearing on the nature of that shipment,
14   the alleged breach here was a breach wholly of the sale of
15   goods provisions of the contract, not of its incidental
16   maritime aspects, or indeed, of any transportation aspect at
17   all.  There is thus no basis in this case for maritime
18   jurisdiction.
19        Now, those are the reasons for my ruling, but I think
20   it would be a blinking reality to ignore another factor about
21   the case.
22        In recent years, maritime attachments in this District
23   in particular, and distinct from just about everywhere else in
24   the United States, have become a rather prominent heading of
25   our jurisdiction.  This stems from the Second Circuit's
                    SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300

14

6A57SHAM
1   decision in Winter Storm Shipping, 310 F.3d 263 (2d Cir. 2002),
2   in which the Court of Appeals permitted the attachment of
3   transient assets, essentially wire transfers, passing through
4   New York City and through the banks and the New York
5   clearinghouse, which essentially has resulted in a system in
6   which disputes between parties all over the world tend to find
7   their way here not so that the case can actually be litigated
8   here but solely for the purpose of obtaining security via the
9   maritime attachment provisions of Rule B of the admiralty
10  rules.
11        And the Second Circuit recently applied Rule B in a
12  rather literal manner that disapproved of the actions of some
13  district court judges -- this one not included -- in trying to
14  set additional limits or additional restrictions on the ability
15  to obtain maritime attachments.  And that decision, Aqua Stoli,
16  it seems to me to press a continuation of the liberal use of
17  maritime attachments in this District, though I do note that
18  the opinion in Aqua Stoli contained a footnote, which loosely
19  paraphrased says, my God, what have we done, and casts some
20  doubt on whether Winter Storm was correctly decided.  But it is
21  decided, and we have to live with it.
22        This is relevant only for the following reasons:  I
23  note that in light of the decisions in Winter Storm and Aqua
24  Stoli, we can expect efforts by plaintiffs, entirely
25  legitimately, to try to obtain maritime attachments by
                    SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300

15

6A57SHAM
1   interpreting the admiralty jurisdiction of this court
2   liberally.  Were such efforts to be countenanced, we would have
3   in effect the kind of perfect storm -- forgive me, the courts
4   addressing admiralty cases always seem inclined to nautical
5   puns -- but we have a kind of perfect storm in which the
6   combination of expansive maritime attachments and expansive
7   interpretations of admiralty jurisdiction would mean that just
8   about any international dispute in any sort of commercial
9   context all over the world, wherever anything came close to a
10  boat, would result in the potential for filing attachments in
11  this District.
12        Now, that would be great news for the New York bar,
13  which is not something that in my family has ever been regarded
14  as a negative, but it would be less good news for this court
                              Page 7

```
                    Transcript of Oral Argument.txt
15    and less good news for the banks that would have to administer
16    these attachments, and ultimately less good news for the
17    orderly resolution of disputes around the world.
18            Now, none of that constitutes a reason for declining
19    to find admiralty jurisdiction in a case where admiralty
20    jurisdiction exists, and that's why I first made clear that in
21    this case I believe that under the case law this is not
22    properly viewed as a maritime case.
23            But in the event this decision is reviewed by the
24    Second Circuit, I wanted them to be aware that I am aware of
25    the realistic consequences here and of the reasons why there is
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300
```

16

```
      6A57SHAM
1     an incentive for plaintiffs to seek expansive interpretations
2     of the admiralty jurisdiction.
3             I am convinced that none of this was in the mind of
4     the Supreme Court justices who unanimously decided the Norfolk
5     Southern case.  In fact, it is clear that that court was quite
6     admirably looking to the realities of modern commerce in a way
7     that suggested that admiralty jurisdiction needs to be
8     interpreted in keeping with the commercial realities of the
9     Modern Age, and they had in mind the fact that we no longer
10    have a system that can so readily be separated between maritime
11    transportation and land-based transportation when goods are
12    loaded into a container, put on a truck, taken to the port, the
13    container is then put on a ship, the ship goes somewhere else,
14    and the container is put on a railroad flat car for ultimate
15    delivery, and all of this is arranged by a single contract of
16    carriage.
17            I think that to say, as the Supreme Court did in that
18    case, that where the contract of carriage includes going all
19    the way from Australia to Atlanta or someplace by ship, and
20    then a little rail journey at the end, to call that anything
21    other than a maritime contract would be a mistake.
22            But here we don't have a defendant that undertook to
23    be an integrated carrier, or a ship owner, or any kind of
24    maritime party; we have essentially a basic land-based contract
25    for the sale of goods.  And unless all such contracts which
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300
```

17

```
      6A57SHAM
1     involve anything heavy enough that it's inevitably going to be
2     shipped by sea are to be treated as admiralty contracts, with
3     all of the consequences that that entails, I don't think that
4     some of the expansive language in Norfolk Southern casting
5     doubt on the traditional rule about severing maritime and
6     nonmaritime aspects of contracts, I don't think that language
7     should be interpreted broadly, lest the admiralty jurisdiction
8     swallow up all other forms of commercial cases.  So that's the
9     ruling.
10            Now, Mr. Orzel, I want to get -- specifically the
11    motion is a motion to vacate the attachment.
12            MR. ORZEL:  Correct.
13            THE COURT:  And that's been granted.
14            I take it that given the rationale, you are also
15    implicitly or explicitly, you are now going to move to dismiss
16    the action for lack of jurisdiction.
17            MR. ORZEL:  Correct, your Honor.
18            THE COURT:  OK.  And I also assume then, Ms. Davies,
19    that you have no problem with my dismissing the underlying
                              Page 8
```

Transcript of Oral Argument.txt

20  action for lack of jurisdiction, which will put you in a
21  position, if you choose, to pursue this further, to take this
22  ruling directly to the Second Circuit and not worry about
23  the -- I don't know if the vacation order in itself would be
24  appealable.
25          MS. DAVIES:  We have no problem with that, your Honor,
            SOUTHERN DISTRICT REPORTERS, P.C.
                    (212) 805-0300

18

6A57SHAM
1   although we would respectfully request that you stay the
2   release of the funds while plaintiff considers their options to
3   appeal.
4           THE COURT:  No, I'm not going to do that.  I think
5   this is a case where there is no jurisdiction, and, you know,
6   if we're wrong you will get it back, because it seems like this
7   company engages in enough transactions that if at some point it
8   turns out that I'm wrong, you file a new attachment, or the
9   attachment is reinstated, and unless they go bankrupt between
10  now and then -- which nobody is suggesting is going to
11  happen -- you will have new security once more.
12          All right.  So the stay is denied.  The order of
13  attachment is vacated.  The underlying action is dismissed for
14  lack of jurisdiction.  The plaintiff's motion to stay those
15  rulings is denied, and I think we have done our day's work.
16          OK.  Thank you very much.
17          Mr. Orzel, we will issue a written order, just sort of
18  invoking the on-the-record opinion, and I guess you will get
19  that tomorrow.  OK?
20          MR. ORZEL:  OK.  Very good.
21          THE COURT:  All right.  Very good.
22                          - - -
23
24
25

            SOUTHERN DISTRICT REPORTERS, P.C.
                    (212) 805-0300

Page 9

**KAHN DECLARATION**

**EXHIBIT 6**

# GUIDE TO ARBITRATIONS AND APPEALS

October 2005

## INTRODUCTION

This paper is published for guidance only. It is not exhaustive but outlines the procedures to be followed under the Federation's Rules of Arbitration and Appeal and the Arbitration Act 1996. It is designed to help those involved in arbitrations and appeals whether as a party to a dispute, an arbitrator, an umpire or a Board of Appeal member. It should be read in conjunction with the Rules of Arbitration and Appeal. Arbitration and Appeal Procedures are governed by those Rules of Arbitration and Appeal in force at the time the contract was entered into. This Guide addresses the Federation's primary arbitration services, that of the 2 Tier system (as per FOSFA Contract Terms - Arbitration Clause) but many of its points are applicable as appropriate to the alternative Small Claims Single Tier Rules of Arbitration and the Rules of Arbitration for Brokerage Commission and Interest.

Where the words "FOSFA International", "FOSFA" or "the Federation" appear in this Guide, they shall read as meaning the "Federation of Oils, Seeds and Fats Associations Limited".

The Federation's system of arbitrations and appeals is based on the standard Domicile and Arbitration Clauses incorporated in every FOSFA International form of contract. They read:

> **"DOMICILE:** This contract shall be deemed to have been made in England and the construction, validity and performance thereof shall be governed in all respect by English law. Any dispute arising out of or in connection therewith shall be submitted to arbitration in accordance with the Rules of the Federation. The serving of proceedings upon any party by sending same to their last known address together with leaving a copy of such proceedings at the offices of the Federation shall be deemed good service, rule of law or equity to the contrary notwithstanding."

> **"ARBITRATION:** Any dispute arising out of this contract, including any question of law arising in connection therewith, shall be referred to arbitration in London (or elsewhere if so agreed) in accordance with the Rules of Arbitration and Appeal of the Federation of Oils, Seeds and Fats Associations Limited in force at the date of this contract and of which both parties hereto shall be deemed to be cognizant.

> "Neither party hereto, nor any persons claiming under either of them, shall bring any action or other legal proceedings against the other of them in respect of any such dispute until such dispute shall first have been heard and determined by the arbitrators, umpire or Board of Appeal (as the case may be) in accordance with the Rules of Arbitration and Appeal of the Federation and it is hereby expressly agreed and declared that the obtaining of any award from the arbitrators, umpire or Board of Appeal (as the case may be), shall be a condition precedent to the right of either party hereto or of any person claiming under either of them to bring any action or other legal proceedings against the other of them in respect of any such dispute."

In disputes under a FOSFA International form of contract the Rules of Arbitration and Appeal of the Federation are paramount. The parties, the arbitrators, the umpires and members of Boards of Appeal are deemed to know and must abide by the Rules. If the Rules do not cover any particular matter then, generally speaking, it is governed by the Arbitration Act and by the English common law of arbitration as embodied in precedents established by judgements of the Court handed down in previous cases.

## ARBITRATIONS

### THE PARTIES - THEIR RIGHTS AND DUTIES

Each party to a dispute on a contract subject to the Federation's Rules has the right to claim arbitration and has the duty to do so instead of starting legal proceedings.

Each party has the right to appoint an arbitrator of his choice who is a Trading, Full Broker or Full Non-Trading Member of the Federation or a nominated representative of a Trading, Full Broker or Full Non-Trading Member (as listed in the Handbook) and subject to an age limit of 75 if still active in the trade or two years after retirement whichever comes first (Rule 1(c)) provided that the arbitrator is eligible to accept appointment and does so. Alternatively the parties may agree on the appointment of a sole arbitrator (Note 1 below). No person wholly or principally engaged in legal practice shall be eligible to act as an arbitrator or umpire.

A party claims arbitration by simultaneously giving notice to the other party and to the Federation of his claim for arbitration with the name of the arbitrator appointed by him and the nature of the dispute. He must do so within the strict time limits laid down in Rule 2(a) for claims of quality and/or condition and in Rule 2(b) for other claims. Failure to do so may result in his claim being time-barred (Rule 2(d)). The claimant should send a copy of the contract out of which the dispute arose to the Federation.

The other party must appoint an arbitrator and notify his name to the claimant and to the Federation within the strict time limits (specified in Rule 2) of 7 consecutive days for claims on quality and/or condition and 30 consecutive days for other claims, failing which the claimant may apply to the Federation to appoint an arbitrator under the terms of Rule 1(d) for which a charge will be made.

The party claiming arbitration must make a written submission, with supporting documents to the appointed arbitrators, the Federation and to the other party, within 10 consecutive days of the claim for arbitration for claims on quality and/or condition and without delay for other claims (Rules 4(a)(i) and 4(b)(i)).

The other party must submit his reply, with supporting evidence, to the claimant, the arbitrators and the Federation within 10 consecutive days for claims on quality and/or condition and without delay for other claims (Rules 4(a)(ii), 4(b)(ii) and Note 2 below).

Each party has the right to attend the arbitration hearing provided the arbitrators or umpire has been notified of the intention to do so. Either party has the right either to present their own case or to be represented at the hearing, but may not have present or be represented by any member of the legal profession wholly or principally engaged in legal practice (Rule 4(g)).

Arbitrators and umpires are entitled to require the claimant to lodge a deposit with the Federation (Rule 4(h)).

If any party to an arbitration considers that either arbitrator or the umpire is failing to exercise all reasonable despatch in entering on or proceeding with the arbitration, then that party may notify the Federation accordingly in writing. The Federation is empowered to require the arbitrator/umpire to explain his reasons for delaying or to complete the arbitration or ultimately to be removed from the arbitration (Rule 4(i)).

When the Federation notifies the parties that an award of arbitration is available on payment of the fees etc, each party has the right to take up the award, but the claimant in the arbitration has the ultimate duty to take up the award.

Each party, by engaging in arbitration, agrees to be liable to the Federation for payment of all fees and expenses of the arbitration (Preamble to the Rules).

There are occasions when arbitration is claimed in order to preserve time limits and it may not be possible to proceed with some of these or they may have been settled. Therefore, if neither the claimant nor the respondent has submitted any documentary evidence or submissions to the arbitrators with a copy to the other party within a period of one year from the date of appointment of the first named arbitrator, then the claim to arbitration shall be deemed to have lapsed (Rule 3). Any renewal must be made before the expiry of one year and can only be extended for a period of one year with further extensions having to be made within that extended period.

Notes

1       Where a sole arbitrator is appointed, any reference in this Guide to umpire will not apply.
2       For a claim other than on quality and/or condition where the contract forms part of a string, separate awards will be issued for each set of contracting parties unless agreement to the arbitration being held between first Seller and last Buyer has been given in writing by all parties in the string (Rule 6(c)(ii)).

## ARBITRATORS AND UMPIRES - THEIR RIGHTS AND DUTIES

Within the framework of the Rules and the law of England, arbitrators and umpires have the right to determine how the arbitration shall be conducted, to decide the time and place of meetings, to call upon the parties for further information or evidence and to make Orders for Direction.

Arbitrators and umpires have the right to be paid their reasonable fees, costs and expenses in respect of their award.

Before accepting appointment, arbitrators and umpires have the duty to satisfy themselves that they are eligible to act in the dispute and that:

(a)     They are a Trading, Full Broker or Full Non-Trading Member or a nominated representative of a Trading, Full Broker or Full Non-Trading Member (Rule 1(c));
(b)     They, (i), are not age 75 or over and, (ii), have not been retired from active trade for more than two years (Rule 1(c));
(c)     They, their company or firm, have no direct or indirect interest in the transaction in dispute;
(d)     They are not already acting as arbitrator or umpire in ten or more disputes excluding arbitrations on quality and/or condition and any arbitration stayed by Court Order;
(e)     They have not already advised or been consulted by one of the parties to the dispute in respect of the specific dispute;
(f)     They are not suspended as an arbitrator.

The arbitrators or umpire may, at their discretion, seek legal advice, any expenses incurred being a charge against the arbitration.

Before proceeding with an arbitration, arbitrators and umpires must satisfy themselves that they have jurisdiction, that is, that there is prima facie evidence of a contract between the parties and that the agreement to arbitrate is subject to the Federation's Rules of Arbitration and Appeal. If they find that they have no jurisdiction they shall issue an award to say so. If they do have jurisdiction they shall proceed to deal with the dispute before them.

Once arbitrators have been appointed their legal duty is to adjudicate jointly and impartially on the dispute between the parties and not to act as agents or advocates of either party. They must act fairly to both parties and must observe the generally accepted but not specifically defined "rules of natural justice". They must ensure that each party is aware of the claims made against him and is given the opportunity to reply to them. Whilst arbitrators are expected to use their general trade knowledge and skill, they may not use any particular knowledge relating to the case in dispute, unless it is first raised with both parties and each is given the opportunity to comment or make submissions on it. Furthermore arbitrators may not decide issues in dispute on a basis not argued or relied on by the parties without first giving the parties an opportunity to make submissions thereon.

Each arbitrator has the right and duty to examine the documentary evidence supplied by both parties to the dispute. If one party puts in any additional evidence that has not been supplied to the other, then copies of this must be sent to the other arbitrator and to the other party. Arbitrators may request additional documents from either party and should advise both parties of such a request.

If at any stage it becomes evident that an arbitrator, his company or firm has any interest, direct or indirect, in the transaction in dispute then he should withdraw as no longer eligible.

Arbitrators and umpires have the duty to ensure that the time limits applicable to arbitrations laid down in the Rules are observed, subject to their discretion to extend them in certain circumstances.

On request, arbitrators and umpires have the duty to keep the Federation informed of the progress of their arbitrations.

If arbitrators are in agreement about their decision, they have the duty to submit to the Federation a draft award, incorporating their reasons, for typing and then for signing by the arbitrators.

If the arbitrators cannot agree, they shall immediately appoint an umpire and notify his name to the parties and the Federation. If they are unable to agree on a person to be appointed as umpire they must notify the Federation in writing, whereupon the Federation will appoint an umpire.

Once an umpire is appointed, he takes over the whole of the case, whereupon the arbitrators cease to have the power to act as arbitrators. However, they may then assume the role of advocate/agent for their respective parties within the evidence/argument supplied and in that capacity make written submissions to the umpire or argue their cases before him but would normally point out to him any areas in which they are in agreement.

Under no circumstances may an arbitrator or an umpire disclose an award until it is taken up.

### THE FEDERATION - RIGHTS AND DUTIES

The Federation, through its staff, administers the system of arbitrations. It has the right to be paid the fees, costs and expenses of arbitrations by the parties concerned.

The Federation has the following duties laid upon it under the Rules and/or by the Council:

| | |
|---|---|
| (a) | On application by the other party, to appoint an arbitrator on behalf of a party that fails to appoint its arbitrator; |
| (b) | To appoint an umpire if arbitrators are unable to agree on the name of a person to be appointed; |
| (c) | To appoint substitute arbitrators and umpires in certain circumstances; |
| (d) | To monitor the progress of arbitrations but without undue interference and to bring to the attention of the Council any cases of undue delay; |
| (e) | To type the awards of arbitrators and umpires; |
| (f) | To charge the Federation's fees as approved by the Council; |
| (g) | On receiving payment of the fees, to issue the awards and arrange payment of arbitrators' fees and expenses; |
| (h) | The Federation's staff may not disclose any information concerning an award until it is taken up. |

### ARBITRATION PROCEDURES

All documents submitted by the parties to the dispute should have been exchanged between the arbitrators and the parties prior to any meeting or hearing.

If parties and/or their representatives attend the arbitration they are entitled to present further written evidence and/or oral submissions and/or witnesses, but each may only do so or be examined in the presence of all and must withdraw while the arbitrators consider the merits of the case.

An arbitration hearing is conducted on the "adversarial" system whereby the parties or their representatives appear before the arbitrators or umpire to present their cases. The claimants first make their submissions, the defendants then have the right to reply, and finally the claimants have the right to comment on the defendants' reply. The arbitrators or umpire may then ask questions to clarify any points of evidence.

If the procedure does not involve a hearing, the same investigation of the documentary submissions of the parties takes place, but in an informal and abbreviated manner.

Arbitrators and umpires must decide the case on the arguments and evidence put before them by the parties or their representatives, but they are entitled to use their own knowledge of the trade (including knowledge of trade customs) in deciding on their award.

However, if arbitrators or umpires have knowledge of facts relating to the dispute before them which have not been submitted by the parties, they should reveal these facts and invite the parties to comment on them. Likewise they should not decide any issue on a basis not argued or relied upon by the parties without first inviting the parties to make submissions thereon.

For arbitrations on quality and/or condition where samples are to be examined, arbitrators and umpires must give the Federation at least 72 hours prior notice for samples to be made available.

The Federation may dispose of samples 6 months after an arbitration award has been issued unless a specific request has been made to and acknowledged by the Federation or an appeal against the award has been lodged.

**ARBITRATION AWARDS (RULE 6)**

Draft awards and documentation submitted to the Federation by arbitrators/umpires must be clearly handwritten or preferably typed and must give all the necessary information, in particular the full and correct names and address of the parties to the arbitration, and full contract details.

The award must state the findings of fact and the reasons that lead to the decisions of the arbitrators or umpire. It must be expressed in plain English that allows no interpretation other than that intended and must deal with all matters that have been raised by the parties. The Council has instructed that the staff responsible for arbitrations and appeals should scrutinise all arbitration awards to ensure that they comply with the Rules and the Arbitration Act and that they contain no inadvertent ambiguities or expressions that might not be immediately clear in meaning.

If appropriate, the award should state clearly the sum to be awarded as damages or allowance, and by whom and to whom it is to be paid. It should normally be in the currency of the contract. More important, it should give figures for delivered weights, contract and settlement prices etc, sufficient to enable the total amount of damages to be calculated. The award should normally provide for the payment of interest, but if the arbitrators or umpire decide otherwise, the reasons for their decision should be stated. It is important to note that under the 1996 Arbitration Act interest should be awarded up to the date of payment and arbitrators are now allowed to award compound interest in which case the "breaks" should be determined.

Arbitrators and umpires must decide their fees, which should normally be based on the time spent on the award/s and on the magnitude and the complexity of the case. Notice of fees, by whom they are to be paid and, if by both parties, in what proportions, should also be submitted to the Federation.

# A P P E A L S

**THE PARTIES - THEIR RIGHTS AND DUTIES**

Each party has the right to appeal to the Federation provided that:

(a)     Payment of the fees and expenses of the arbitration is received within 42 days of the award date (Rule 6(b));
(b)     Notice of appeal is received not later than 12.00 noon GMT on the 28th consecutive day after the date of the award is despatched (Rule 7(a)). A copy of the notice should also be sent to the other party.

A deposit is required and must be received by the Federation not later than 7 consecutive days of the notice of appeal (Rule 7(b)).

If a party withdraws his appeal against an award of arbitration, the other party has the right to appeal against that award in accordance with Rule 6, except that notice of appeal must be received by the Federation not later than 12.00 hours GMT on the 21st consecutive day after the date of the Federation's notice to that party of the withdrawal (Rule 10(b)).
Each party has the right to attend the appeal and to present his own case or to appoint an eligible representative to do so (Rule 9(a)).

However, parties to an appeal may not be represented by or have present at the hearing, counsel or solicitor or any member of the legal profession wholly or principally engaged in legal practice unless, in response to a request for legal representation by either party, the Board of Appeal decides in its sole discretion that the case is of special importance.

Each party to the appeal has the right to take up the award by paying the fees, costs and expenses, but the party that lodged that appeal has the duty to do so.

Each party, by engaging in an appeal, assumes the responsibility of being liable to the Federation for all fees, costs and expenses incurred in connection with the appeal.

**THE BOARD OF APPEAL - RIGHTS AND DUTIES**

Under the law of England, an appeal is a second tier arbitration and the members of the Board of Appeal have the same rights and duties as arbitrators. They must act fairly to both parties and must observe the generally accepted but not specifically defined "rules of natural justice". They must ensure that each party is aware of the claims made against him and is given the opportunity to reply to them. Before the commencement of an appeal hearing, each member of the Board has the duty to ensure that he is eligible to act in the dispute and, in particular, that:

(a)     He, his company or firm, has no direct or indirect interest in the transaction in dispute;
(b)     He has not advised or been consulted by any of the parties to the dispute in respect of the specific dispute.

Before proceeding with the hearing, the Board of Appeal must be satisfied that it has jurisdiction to act in the dispute.

Once a date for an appeal hearing has been set, only the Board of Appeal has the power to grant postponement of the hearing.

Only the Board of Appeal has the right to decide whether legal representation of the parties at the hearing shall be granted.

The Board of Appeal has the right to require from time to time further deposits to be made by any party to the appeal.

Each member of the Board has the right to be paid his reasonable expenses for attending the hearing of the appeal and his reasonable fee in respect of the appeal award.

## THE FEDERATION - RIGHTS AND DUTIES

The Federation, through its staff, administers the appeals system and in particular has the duty:

(a)    To provide the necessary facilities for appeal;
(b)    To appoint a Chairman and the other members of Boards of Appeal;
(c)    To type and issue the awards of Boards of Appeal;
(d)    To provide the Secretary to the Board of Appeal.

The Federation has the right to be paid its fees for appeals by the parties and the duty to arrange payment of Board members' fees and expenses.

## APPEAL PROCEDURES

An appeal entails a complete rehearing of a dispute. Neither the parties, the representatives nor the Board can assume that evidence or information produced at the arbitration is available to the Board.

On lodging an appeal the appellants will be asked to provide to the Federation the original or a good quality copy of the contract which is the subject of dispute and to name their authorised representative for the hearing. The respondents will be notified by the Federation that an appeal has been lodged and will be asked to name their authorised representative. The appellant shall provide to the other party and to the Federation their Outline of Reasons for Appeal, within 21 days of the lodging of the appeal (Rule 7(d)).

Any new evidence not submitted at the first tier arbitration and/or any law cases on which the parties wish to rely must be given to the other party and/or their representative in good time prior to the hearing of the Appeal. Parties and/or their representatives should note that "in good time" is usually construed to be a minimum of 21 days prior to the hearing of the Appeal for appellants, and 10 days for respondents. Documents produced at a later stage can lead to a request for a postponement and, if granted, then the costs of the postponement would usually be for the account of the party producing the late document(s), irrespective of the outcome of the Appeal. However submission of late documents is discouraged. Ideally if the parties and/or their representatives can agree on a joint bundle of documents to be presented to the Board this saves considerable time in the hearing of the Appeal, with the consequent cost saving for all concerned.

Either party may state his case orally. Either party may put in a written statement of his case without having a representative present (Rule 9). It is, however, more usual for the parties' authorised representatives to hand to each member of the Board a typed statement of their cases with supporting evidence and then to read out their statements and indicate the relevant evidence.

The parties or their representatives must provide for the hearing of the appeal seven copies of any written statement and documentary evidence that they wish to submit, one for each Board member, one for the other party or his representative (new evidence to be exchanged as stated above) and one for the Secretary to the Board, to be retained by the Federation.

At the appointed time for the hearing, the Board members meet. Should it be necessary to elect a chairman, then the Board shall do so. Each member will have considered the Award of Arbitration, the contract which is the subject of dispute and, if appropriate, the relevant FOSFA International contract form in force at the date of the contract, together with the appellant's summary of the case to be argued, which the Secretary of the Board will have provided for them.

The chairman of the Board of Appeal is in charge of proceedings. All comments by representatives and questions to representatives from Board members must be addressed to or through the chairman.
The representatives of the parties are required to present argument and evidence to support it. They must not make any points not directly relevant to the case nor any unfounded assertions. Normally one representative must not be permitted to interrupt the other during the presentation of his case. Either party may call witnesses to give oral evidence and any such witness may be questioned by the other party's representative and by the Board.

After the preliminary introductions etc, the board will invite the appellant's representative to present his case. The Board may then ask questions to clarify any points that have been made.

The Board will then invite the respondent's representative to present his case and to deal with any points made by the appellant's representative. Again, the Board may ask questions to clarify points of evidence.

The Board will then invite the appellant's representative to answer and to submit evidence relating to any points raised by the respondent's representative, but he may not introduce any new evidence unless the Board and the respondent's representative agree that it may be introduced. The respondent's representative will be given the right to reply to any new evidence. The Board may ask further questions, after which the hearing is at an end.

The Board must decide the case on the arguments and evidence put before it by the parties' representatives, and should disregard any evidence which is not relevant to the particular appeal.

The Board is fully entitled to use its own knowledge of the trade (including knowledge of trade customs) in arriving at its award. But if the Board has some particular knowledge of the facts of the case before it, independent of any evidence put forward by the representatives of the parties, and they are going to rely on that, then that particular knowledge should be drawn to the attention of the representatives to enable them to make any comments upon it.

Likewise the Board should not decide any issue on a basis not argued or relied upon by the parties without first inviting them to make submissions thereon.

For appeals on quality and/or condition where samples are examined by the Board of Appeal, the Federation may dispose of the samples 6 months after the appeal award has been issued unless a specific request to retain them has been made to and acknowledged by the Federation.

### APPEAL AWARDS

The award must state the findings of facts and the reasons that lead to the decisions of the Board of Appeal. It must be expressed in plain English that allows no interpretation other than that intended and must deal with all matters that have been raised by the parties. The Council has instructed that the staff responsible for arbitrations and appeals, should scrutinise all Appeal Awards to ensure that they comply with the Rules and the Arbitration Act and that they contain no inadvertent ambiguities or expressions that might not be immediately clear in meaning.

If appropriate, the award should state clearly the sum to be awarded as damages or allowance, and by whom and to whom it is to be paid. It should normally be in the currency of the contract. More important, it should give figures for delivered weights, contract and settlement prices etc, sufficient to enable a total amount of damages to be calculated.

The award should normally provide for the payment of interest but if the Board decides otherwise, the reasons for their decision should be stated. It is important to note that under the 1996 Arbitration Act interest should be awarded up to the date of payment and Boards are allowed to aware compound interest in which case the "breaks" should be determined.

The Board of Appeal must decide their fees, which should normally be based on the magnitude and complexity of the case and the time spent on it.

## ENFORCEMENT OF ARBITRATION AND APPEAL AWARDS

If a party to an award notifies the Federation that the other party neglects or refuses to honour the award, the Council of the Federation may post on the Federation's notice Board and/or circularise to members in any way thought fit notification to that effect.

Just to be told of the possible consequences of his neglect or refusal is often enough to cause a party to honour the award. But if not, the party in whose favour the award is made may have to seek the assistance of the court in the country of the party against whom it is made for enforcement of the award. The law of the Federation's contracts and arbitrations is English law. For parties in England there is a fairly simple procedure for applying to the High Court to obtain a judgement for execution of the award.

However, almost all Federation awards involve one party, and often both, from a country other than England. A party seeking to have an award endorsed in a country other than England should take legal advice on the procedures that apply. In almost all cases there will be a requirement for an authenticated copy of the award and perhaps of the arbitration agreement. In this, the Federation is able to assist by providing notarised copies of awards, legalised as necessary for enforcement in the appropriate country, together with statement and/or affidavits sworn by Federation staff to the effect that the necessary procedures under the Federation's Rules of Arbitration and Appeal have been complied with. A fee is charged for this service.

Different countries have different laws and procedures for enforcement of foreign awards. But there are two international conventions to which most countries of the world are parties. They are the Geneva Convention of 1927 on the Execution of Foreign Arbitral Awards and the New York Convention of 1958 of the Recognition and Enforcement of Foreign Arbitral Awards. Under the Geneva Convention each contracting country is required to recognise as binding and to enforce awards made in the territory of another contracting state, under certain conditions. The New York Convention applied to the recognition and enforcement of arbitral awards made in the territory of a State other than the State where the recognition and enforcement of such awards are sought. One practical improvement introduced by the New York Convention is that it has restricted the grounds on which the court of the country in which a foreign award is sought to be enforced can re-examine it. Also, the onus of proving that the award was not enforceable is placed on the defendant.

We must repeat that these notes are issued for guidance only and are not complete but it is hoped that they will be of help to the trade.

**KAHN DECLARATION**

**EXHIBIT 7**

Revised and Effective
from 1 October 2005

**FEDERATION OF OILS, SEEDS AND FATS ASSOCIATIONS LTD**

**FOSFA INTERNATIONAL**

# RULES OF ARBITRATION
# AND
# APPEAL

**20 ST DUNSTAN'S HILL, LONDON EC3R 8NQ**

## RULES OF ARBITRATION AND APPEAL

Any dispute arising out of a contract or contracts subject to these Rules, including any questions of law arising in connection therewith, shall be referred to arbitration in London (or without prejudice to the juridical seat elsewhere if so agreed) in accordance with the Arbitration Act 1996 and any statutory modification or re-enactment thereof for the time being in force.

The juridical seat of the arbitration shall be, and is hereby designated pursuant to Section 3 of the Arbitration Act 1996 as, England.

Each party engaging in an arbitration or an appeal pursuant to these Rules, whether or not a Member of the Federation, is deemed therefore to abide by these Rules and to agree with the Federation to be liable to the Federation (jointly and severally with the other parties to the arbitration or appeal) for all fees and expenses incurred in connection with the arbitration or appeal, which said fees and expenses shall, upon notification by the Federation under the provisions of Rules 1(b), 1(f), 6(b) and 9, be and become a debt due to the Federation.

**1. APPOINTMENT OF ARBITRATORS/UMPIRE**

(a) Each party shall appoint an arbitrator who shall have accepted the appointment. However the two parties may by agreement appoint a sole arbitrator who shall have accepted the appointment. Any reference to arbitrators in these Rules shall also be taken to refer to a sole arbitrator. Each party shall advise the Federation promptly of the name of any arbitrator which that party has appointed.

(b) If two arbitrators have been appointed they shall, if and when they disagree, appoint an umpire. If the arbitrators fail to agree on the appointment of an umpire, they shall notify the Federation which shall appoint an umpire. The Federation shall charge a fee, to be fixed by the Council from time to time, on such appointment.

(c) Only Trading, Full Broker and Full Non-Trading Members or their nominated representative/s to the Federation shall have the right to act as arbitrators or umpires subject to retirement at age 75, if still active in the trade, or two years after retirement, whichever comes first. No person wholly or principally engaged in legal practice shall be eligible to act as an arbitrator or umpire. No person shall be eligible to act who, or whose company or firm has any direct or indirect interest in the transaction in the dispute. No person shall be eligible to proceed as an arbitrator or umpire who is already proceeding as an arbitrator or umpire in 10 disputes, excluding arbitrations on quality and/or condition and any arbitration stayed by Order of the Court. Any arbitration other than on quality and/or condition that is being held as between the first Seller and the last Buyer in a string shall be counted as a single dispute.

(d) If the party claiming arbitration has notified the other party and the Federation in accordance with Rule 2(a) or 2(b) and that party fails to appoint an arbitrator within the time specified, or in the event that an arbitrator refuses to act, becomes incapable of acting or ineligible to act, or delays unduly, and the party who made the appointment omits to appoint a substitute, then the other party may apply to the Federation in accordance with Rule 1(f) for the appointment of an arbitrator to act on behalf of the party who failed to appoint an arbitrator or substitute as the case may be.

(e) Any application to the Federation as mentioned under Rule 1(b) and 1(d) shall be accompanied by a copy of the notice of claim for arbitration together with a copy of the contract.

(f) The Federation on receiving an application under Rule 1(d) shall charge the appropriate fee fixed by the Council from time to time. The Federation will notify the party who has failed to make an appointment or a substitution of its arbitrator, as the case may be, that the Federation intends to make such an appointment unless that party makes its own appointment within 14 consecutive days of notice being dispatched to it by the Federation. In the absence of an appointment being notified to the Federation within the stipulated period the Federation shall make such an appointment.

**2. PROCEDURE FOR CLAIMING ARBITRATION AND TIME LIMITS**

(a) Claims on quality and/or condition:

(i) If the claim is not to be supported by certificate/s of contractual analysis/ses, the party claiming arbitration shall despatch the notice of claim with the name of his appointed arbitrator to the other party within 21 consecutive days from the date of completion of discharge of the goods and shall at the same time notify the Federation and despatch sealed sample/s to the office of the Federation, where such sample/s shall be held at the disposal of the arbitrators and/or umpire. The other party shall nominate an arbitrator and notify his name to the Federation within 7 consecutive days from receipt of such notice. Notwithstanding the above, if the claimant requires a supporting analysis then a further sample shall have been despatched to the analyst within 21 consecutive days from the date of completion of discharge of the goods.

For FOB, ex tank, ex mill and ex store contracts under 2(a) the word 'delivery' shall be read in place of 'discharge'.

(ii) If the claim is to be supported by certificate/s of contractual analysis/ses, the notice under 2(a)(i) shall be dispatched and the Federation notified within 14 consecutive days from the date of the final analysis certificate. The other party shall nominate an arbitrator and notify his name to the Federation within 7 consecutive days from the receipt of such notice.

(iii) If the claim relates to goods sold as fair average quality and the contract provides for a standard average for the month of shipment being made, the notice shall be dispatched and the Federation notified within 14 consecutive days of the publication in the trade lists that the standard has been or will not be made. The other party shall nominate an arbitrator and notify his name to the Federation within 7 consecutive days from the receipt of such notice.

If the arbitration is not proceeded with within 14 consecutive days of the appointment of the arbitrator acting for the respondent, then either party may apply to the Federation in accordance with Rule 1(d) for the appointment of a substitute.

(b) Claims other than on quality and/or condition shall be notified by the claimant with the name of an arbitrator to the other party and to the Federation within the time limits stipulated in this Rule:

(i) For goods sold

(1) On CIF, CIFFO, C&F and similar contract terms: not later than 120 consecutive days after the expiry of the contract period of shipment or of the date of completion of final discharge of the goods whichever period shall last expire. The other party shall nominate an arbitrator and notify his name to the Federation within 30 consecutive days from receipt of such notice.

(2) On FOB terms: not later than 120 consecutive days after the expiry of the contract period of shipment. The other party shall nominate an arbitrator and notify his name to the Federation within 30 consecutive days from receipt of such notice.

(3) On any other terms: not later than 120 consecutive days after the last day of the contractual delivery period. The other party shall nominate an arbitrator and notify his name to the Federation within 30 consecutive days from receipt of such notice.

(ii) In respect of any monies due by one party to the other, not later than 60 consecutive days after the dispute has arisen. The other party shall nominate an arbitrator and notify his name to the Federation within 30 consecutive days from receipt of such notice.

(c) Claims for arbitration shall be made by any means of rapid written communication (e-mails excluded). All notices shall be under reserve for errors in transmission. Notices shall be passed on with due despatch by intermediate Buyers and Sellers. Any notice received after 16.00 hours on a business day shall be deemed to have been received on the following business day. Notice from a broker shall be a valid notice under these Rules.

Should the time limit for doing any act or giving any notice expire on a Saturday, Sunday or any public holiday in the country where the party required to do the act or give the notice resides or carries on business or in the country where the act has to be done or the notice has to be received or on any day which the Federation shall declare to be a non-business day the time so limited shall be extended until the first business day thereafter. All business days shall be deemed to end at 16.00 hours Mondays to Fridays inclusive.

(d) In the event of non-compliance with any of the preceding provisions of this Rule, and of such non-compliance being raised by the respondents as a defence, claims shall be deemed to be waived and absolutely barred unless the arbitrators, umpire or Board of Appeal referred to in these Rules, shall, in their absolute discretion, otherwise determine. Either party has a right of appeal against the arbitrators'/umpire's decision, in which case the Board of Appeal have the same rights as the arbitrators under this clause.

(e) Failure to notify the Federation as required by Rule 1(a), 2(a) or 2(b) shall not in itself debar a claim for arbitration nor prevent an arbitration proceeding but shall be taken into account by arbitrators, umpire or Board of Appeal in exercising their discretion under Rule 2(d).

**3. LAPSE OF CLAIM**

If neither the claimant nor the respondent submits any documentary evidence or submissions to the arbitrator appointed by or for him with the copy to the other party within the period of one year from the date of appointment of the first named arbitrator, then the claim to arbitration shall be deemed to have lapsed on expiry of the said period of one year unless before that date the claim is renewed by a further claim for arbitration to be made by either party notifying the other before the expiry date. Any such renewal shall be for a period of one year from the date of the giving of notice of renewal when it shall lapse again unless renewed in the like manner as the first renewal or unless by then documentary evidence or submissions have been submitted by either the claimant or the respondent. In the event of failure to renew a claim as provided in this Rule such claim shall be deemed to have been withdrawn and abandoned unless the arbitrator/s shall in his/their absolute discretion otherwise determine upon such terms as he/they may think fit.

**4. PROCEDURE FOR ARBITRATIONS**

All submissions, interlocutory applications and related correspondence referred to under this Rule shall be dispatched within any of the specified time limits to: one copy to each of the appointed arbitrators; one copy to the other party; one copy to the Federation.

(a) Claims under Rule 2(a) (quality and/or condition):

   (i) The party claiming arbitration shall despatch in writing his submission together with supporting documents within 10 consecutive days of the claim for arbitration.

   (ii) If the party against whom a claim is made wishes to reply to the claimants submission, such reply together with supporting documents shall be dispatched in writing within 14 consecutive days of the receipt thereof. Failing receipt of such reply, the arbitrators shall proceed with the arbitration without delay.

   (iii) In arbitration under Rule 2(a)(i) and 2(a)(iii), the Award of the arbitrator/s or umpire shall be dispatched to FOSFA International for typing within 28 consecutive days from the date of the claim or the date of the publication of the standard.

(b) Claims under 2(b) (other than on quality and/or condition):

   (i) The party claiming arbitration shall despatch in writing his submission together with supporting documents without delay.

   (ii) If the party against whom a claim is made wishes to reply, such reply together with supporting documents shall be dispatched in writing without delay. Failing receipt of such reply, the arbitrators shall proceed with the arbitration without delay.

(c) When arbitrators appoint an umpire they shall also notify the Federation.

(d) A sole arbitrator or the arbitrators, by mutual agreement, or the umpire, or the Board of Appeal, as the case may be, shall have discretion to extend the time limits under Rule 4(a).

(e) If one party has submitted any document to the arbitrator/s which has not been submitted to the other party, then a copy thereof shall be supplied to that party by the arbitrator/s prior to the hearing.

(f) The arbitrator/s or the umpire, as the case may be, shall have the power to request further information or documents from either of the parties, to hear oral submissions or evidence if they or he so desire and to make such directions relating to the conduct of the arbitration as they or he think fit. The parties shall be entitled to a reasonable period within which to comply with any such request but the arbitrators or the umpire, as the case may be, having given reasonable notice, may make an Award if such requests have not been compiled with.

(g) If either party has expressed a wish to be present, the arbitrators or the umpire shall give reasonable notice to the parties of the date, time and place when any oral evidence or additional submissions may be heard and both parties to the arbitration or their authorised representatives may attend any such hearing but may not have present or be represented by counsel, solicitor or any member of the legal profession wholly or principally engaged in legal practice.

(h) The arbitrator/s or the umpire at their absolute discretion may require the claimant to lodge a deposit with the Federation on account of the fees, costs and expenses of the arbitration before proceeding. If after the expiration of 14 consecutive days after the notification to the claimant of the deposit required the claimant not having paid such deposit, the arbitration shall be stayed until such time as the deposit is paid. In the event that the deposit is not paid within 28 consecutive days the arbitration shall be deemed to be permanently stayed unless the arbitrator/s or umpire in the exercise of their absolute discretion decide to continue the arbitration.

(i) If any party to an arbitration considers that either arbitrator or the umpire is failing to exercise all reasonable despatch in entering on or proceeding with the arbitration then that party may notify the Federation accordingly in writing with full details. Upon receipt of such notice the Federation shall call upon the arbitrator or umpire to explain the reasons for the delay. The arbitrator or umpire must furnish the Federation with such an explanation within 7 days of the Federation's request for such an explanation. If the Federation is not satisfied with the arbitrators' or umpire's explanation the Federation shall fix a 7 day period in which the arbitrator or umpire is to take the next step required to be done in proceeding with the arbitration. Should the arbitrator or umpire fail to respond to the Federation's request for an explanation or fail to take the next step required to be done in proceeding with the arbitration, within the 7 day period then the Federation shall have the right to require the arbitrator or umpire to resign his position as arbitrator or umpire in that particular arbitration. The arbitrator or umpire shall be deemed to have resigned his position 14 consecutive days after despatch to him of the Federation's written requirement that he resigns his appointment unless otherwise decided by the Federation.

An arbitrator or umpire who is called upon to resign his position as arbitrator or umpire under this provision shall not be entitled to receive any remuneration in respect of his services provided in the particular arbitration in question unless otherwise decided by the Federation. Where an arbitrator resigns his position under this provision then the party who appointed the arbitrator shall appoint another duly qualified arbitrator in his place within 14 days of the notice being dispatched in accordance with the provisions of Rule 1. If that party does not so appoint then the Federation shall make such an appointment and shall charge the defaulting party the appropriate fee fixed by the Council from time to time being in force.

Where an umpire resigns his position under this provision then the two arbitrators who have appointed him shall appoint another umpire in his place, within 7 days of being notified of the resignation of the umpire. If the arbitrators do not so appoint then the Federation shall make such an appointment in accordance with its powers under Rule 1(b).

In circumstances where an arbitrator or umpire is removed from an arbitration by the Federation as provided for above, the Federation may, by a decision of the Council, also suspend or remove that person's right to act as an arbitrator or umpire and to serve on the Appeal Panel.

**5. JURISDICTION**

(a) The arbitrators may rule on their own jurisdiction as to whether there is a valid arbitration agreement.

(b) If arbitrators agree that they have jurisdiction, they shall proceed with the arbitration without delay.

(c) If arbitrators agree that they have no jurisdiction they shall draw up an award in accordance with Rules 6(a) and 6(b).

(d) If the arbitrators cannot agree that they have jurisdiction they shall appoint an umpire under Rule 1(b) who shall first determine the question of jurisdiction.

(e) If the umpire decides that he has jurisdiction he shall proceed with the arbitration without delay.

(f) If the umpire decides that he has no jurisdiction he shall draw up an award in accordance with Rules 6(a) and 6(b).

(g) A right of appeal to the Federation shall apply to Rules 5(c) and 5(f).

**6. PROCEDURE FOR ARBITRATION AWARDS**

(a) Awards, which shall incorporate the reasons therefore, shall be in writing on the official form of the Federation and the arbitrators or the umpire shall have the power to assess and award their fees and award by whom these and other fees and expenses of the arbitration shall be paid. The Federation's fees shall be those in force as prescribed by the Council of the Federation.

(b) When an Award has been signed it shall be the duty of the arbitrators or the umpire to lodge the original and one copy with the Federation who shall date them and give notice to the parties named in the award that the award is at their disposal upon payment of the fees and expenses of the arbitration. Such payment must be received by the Federation within 42 days of the date of the award or the parties shall forfeit their right to appeal against the award under Rule 7. On receipt of payment, the Federation shall immediately send the original award to the party who has paid and send a copy to the other party. Until payment has been made, the contents of the award shall under no circumstances be divulged.

(c) Should the contract form part of a string of contracts which are in all material points identical in terms, except as to the date and price, then:

  (i) In any arbitration for quality and/or condition, as mentioned in Rule 2(a), the arbitration shall be held as between the first Seller and the last Buyer in the string as though they were contracting parties.

    Any Award so made (in these Rules called the String Award) shall, subject to the right of appeal as provided in these Rules, be binding on all the intermediate parties in the string, and may be enforced by any intermediate party against his immediate contracting party as though a separate award has been made under each contract.

  (ii) In other cases arbitration shall only be held as between the first Seller and the last Buyer in a string as though they were contracting parties if all parties in the string agree in writing and provided each intermediate party shall have submitted his contract and all relevant information to the arbitrators. A separate Award shall be made in respect of each contract.

## 7. PROCEDURE FOR CLAIMING APPEAL AND TIME LIMITS

(a) Any party to an award of arbitration shall have the right to appeal to the Appeal Panel of the Federation provided that payment of the fees and expenses of the arbitration was made to the Federation within 42 days of the date of the award as per Rule 6(b) and that notice of appeal is received by the Federation not later than 12.00 hours on the 28th consecutive day after the date on which the award is sent to the parties, in accordance with Rule 6(b).

(b) The appellant when giving notice of appeal to the Federation shall at the same time send a copy to the other principal to the contract and arrange to pay to the Federation a deposit as prescribed by the Council of the Federation on account of fees, costs and expenses of the appeal, which is to be received by the Federation not later than 7 consecutive days after receipt of the notice of appeal.

  If due to currency regulations payment of the deposit is not possible within the 7 day time limit an extension of 14 consecutive days shall be granted for the payment of the deposit provided that the appellant has produced satisfactory evidence from a bank that the application for the transfer of the deposit has been made.

(c) Every notice given to a party to any string Award shall be passed on with due despatch by that party and such passing on, provided it is done with due despatch shall be deemed to be in compliance with the procedure for claiming appeal.

(d) The appellant shall within 21 days of lodging the appeal, provide the Federation and the other party with an outline of the reasons for appeal.

(e) Should it not be possible to perform any of the foregoing acts within the time limits stipulated, application may be made to the Federation for an extension of the time limit, which extension may be granted at the absolute discretion of the Federation.

## 8. PROCEDURE FOR APPOINTMENT OF BOARDS OF APPEAL

(a) The appeal shall be determined by a Board of Appeal consisting of five members appropriately appointed by the Federation from the Appeal Panel. No member of the Panel who, or whose company or firm, has any direct or indirect interest in the transaction in dispute or who has acted as arbitrator or umpire in the case, nor any member of the same company or firm to which either of the arbitrators or the umpire belong, shall be entitled to be appointed a member of the Board of Appeal.

(b) In the case of illness or death, or refusal, or incapacity, or inability to act, of any member appointed to serve on a Board of Appeal, the Federation shall appoint a substitute from the Appeal Panel in his place. Nevertheless if only four members of the Board are able to serve on the day of the substantive hearing, they may, subject to the agreement of the parties or of their duly authorised representatives, exercise all the powers of the Board of Appeal.

(c) In the event of appeals lodged by more than one party in relation to the same Award, the Federation shall consolidate such appeals for hearing by the same Board of Appeal.

## 9. PROCEDURE AT APPEALS

(a) Each party may state their case orally and/or in writing and may appear either personally or be represented by a listed representative in the appropriate section of a Trading, Full Broker or Full Non-Trading member of the Federation and duly appointed in writing, but shall not be represented by or have present at the hearing of such appeal, Counsel or Solicitor, or any member of the legal profession wholly or principally engaged in legal practice, unless, at the sole discretion of the Board of Appeal, the case is of special importance, and in such cases the other party shall have the same rights.

(b) The Board of Appeal shall issue a reasoned Award signed by the Chairman on behalf of the Board and counter signed by the Secretary to the Board of Appeal after confirmation that the majority agree the Award, and when so signed shall be the Award of the Board of Appeal which shall be final and binding.

(c) In respect of any String Award made by a Board of Appeal such String Award shall be binding on the first Sellers, the last Buyers, and all the intermediate parties in the string and may be enforced by any intermediate party against his immediate contracting party as though a separate award had been made under each contract.

(d) The Board of Appeal shall have the power to require from time to time a further deposit/s to be made by either party and shall award the payment of appeal fees, costs and expenses of, and incidental to, the appeal. If an Award is remitted to a Board of Appeal by Order of the Court the Board shall have the power to require a deposit to be made by the party/ies that made application to the Court on account of the fees, costs and expenses of any hearing by the Board of submissions by the parties or of any meeting of the Board occasioned by such remission. No interest shall be payable on any deposit or further deposit made by any party to an appeal under the provisions either of this Rule or Rule 7.

(e) If the appellant, on receiving from the Board of Appeal notice of the date fixed for the hearing of the appeal, requests a postponement of more than 14 days or at the first or any subsequent hearing of the appeal requests an adjournment, then in such events the Board of Appeal may at their absolute discretion direct that as a condition of granting a postponement or an adjournment all or any part of the money required by the terms of the award of arbitration to be paid by either party to the other shall be deposited in a bank (either in England or abroad) as the Board of Appeal may direct. Such money shall be held by such bank in an account in the name of the Federation and otherwise in such terms as the Board of Appeal directs.

  The Board of Appeal shall, where such money has been deposited, in their Award direct how and to which of the parties the amount so held shall be paid out. Provided that, if in the opinion of the Board of Appeal after hearing the parties, the appellant shall have delayed unduly the proceedings of his appeal, he shall after due warning and if the Board of Appeal so decides, be deemed to have withdrawn his appeal in which case the money on deposit (with interest, if any, less tax) shall immediately become due and payable to the party or parties entitled thereto under the terms of the Award of Arbitration.

## 10. WITHDRAWAL OF APPEALS

(a) An appellant shall have the right at any time before the hearing of the appeal to withdraw his appeal subject to payment of such costs, if any, as the Federation or the Board of Appeal may determine:

  (i) On notice being received from the appellant at least 24 hours before the appointment of the Board of Appeal half of the deposit shall be returned.

  (ii) On notice being received at least 72 hours before the time fixed for the hearing by the Board of Appeal one quarter shall be returned.

  (iii) If such notice of withdrawal is received after that time no part of the deposit shall be returned.

  (iv) When an appeal is withdrawn before any action has been taken by the Federation the deposit shall be refunded.

(b) In the event of such withdrawal as aforesaid any other party to an Award of Arbitration shall have a right of appeal against that award to the Appeal Panel of the Federation in accordance with the provisions of Rule 6 save that the time limit for giving notice of appeal laid down in Rule 7(a) shall be 12.00 hours on the 21st consecutive day after the date of the Federation's notice to that party of the aforesaid withdrawal.

**11. GENERAL**

    (a)   (i)    Any objection to the membership of a Board of Appeal on the ground that a member of the Board of Appeal was not eligible to serve must be made in writing and established to the satisfaction of the Council of the Federation before the hearing of the substantive case has commenced.

         (ii)   If such objection is made the Federation in its absolute discretion shall have the power to appoint a substitute member or members of a Board of Appeal from the Appeal Panel up to the beginning of the hearing of the substantive case.

         (iii)  No Award of a Board of Appeal shall be questioned or invalidated on the ground of any irregularity in the appointment of the Board of Appeal or any of its members or on the ground that any member of the Board of Appeal was not eligible to serve.

    (b)   Any notice may be delivered personally or left at the place where the party to whom it is to be delivered is carrying on business or (by reason of the provisions of the contract) is to be considered to be carrying on business. A copy shall be delivered to the Federation.

    (c)   If an Arbitration or an Appeal Award is not taken up by any of the parties to the dispute within 28 consecutive days after the date of the Award, the Federation shall call upon the claimant and the respondent or the appellant and the respondent, as the case may be, to take up the Award. If the claimant and the respondent or the appellant and the respondent fail to take up the Award, the Council of the Federation may post on the Federation's notice board and/or circularise to members in any way thought fit a notification to that effect. The parties to any such arbitration or appeal held under these Rules shall be deemed to have consented to the Council taking such action.

    (d)   In the event of any party to an arbitration or appeal held under these Rules neglecting or refusing to carry out or abide by an Award of arbitrators or umpire or Board of Appeal made under these Rules, the Council of the Federation may post on the Federation's Notice Board and/or circularise to members in any way thought fit a notification to that effect. The parties to any such arbitration or appeal shall be deemed to have consented to the Council taking such action.

© FOSFA Copyright 2005