424-08/LJK

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
EFKO FOOD INGREDIENTS, LTD.,

                                                                        **08 CV 6480 (CM)**

                  Plaintiff,

    -against-

PACIFIC INTER-LINK SDN BHD,

                  Defendant.
------------------------------------------------------------x

**DEFENDANT'S MEMORANDUM OF LAW
IN SUPPORT OF VACATURE OR REDUCTION
OF MARITIME ATTACHMENT
AND/OR DISMISSAL OF ACTION**

                                                        Freehill Hogan & Mahar, LLP
                                                        Attorneys for Defendant
                                                        Pacific Inter-Link Sdn Bhd
                                                        80 Pine Street
                                                        New York, NY 10005
                                                        (212) 425-1900
                                                       (212) 425-1901 fax

Of Counsel:
Lawrence J. Kahn (LK 5215)

NYDOCS1/310176.1

# TABLE OF CONTENTS

| | |
|---|---|
| PRELIMINARY STATEMENT | 1 |
| BACKGROUND FACTS | 1 |
| ARGUMENT | |
| Point I | |
| THIS COURT SHOULD CONSIDER DISMISSAL OF THIS ENTIRE ACTION FOR LACK OF SUBJECT MATTER JURISDICTION | 4 |
| Point II | |
| ADMIRALTY JURISDICTION IS LACKING AND THEREFORE THIS COURT MUST VACATE THE ATTACHMENT | 7 |
| Point III | |
| EFKO'S ENTIRE APPLICATION IS FRIVOLOUS AND THE ATTACHMENT SHOULD BE VACATED OR AT LEAST REDUCED | 10 |
| CONCLUSION | 15 |

# TABLE OF AUTHORITIES

**Statutes**

| | |
|---|---|
| 9 U.S.C. §201 | 6 |
| 9 U.S.C. §203 | 6 |

**Cases**

| | |
|---|---|
| Aston Agro-Industrial AG v. Star Grain Ltd., 2006 U.S. Dist. LEXIS 91636 (S.D.N.Y. Dec. 20, 2006) | 9 |
| Business Guides, Inc. v. Chromatic Communications Enterprises, Inc., 498 U.S. 533 (1991) | 12 |
| Cabassa v. Gummerson, 2006 U.S. Dist. LEXIS 41098 (N.D.N.Y. Mar. 30, 2006) | 13 |
| FH Bertling Holding KG v. Ranhill Engineers and Constructors, 2008 U.S. Dist. LEXIS 52085 (S.D.N.Y. July 9, 2008) | 9 |
| Finecom Shipping Ltd. v. Multi Trade Enterprises AG, 2005 U.S. Dist. LEXIS 25761 (S.D.N.Y. Oct. 25, 2005) | 11 |
| French Republic v. Fahey, 278 F. 947 (D.MD. 1922) | 9 |
| FW/PBS, Inc. v. City of Dallas, 493 U.S. 215 (1990) | 4, 5 |
| Galland v. Margules, 2005 U.S. Dist. LEXIS 17125 (S.D.N.Y. Aug. 17, 2005), *aff'd* 2006 U.S. App. LEXIS 19809 (2d Cir. July 6, 2006) | 4 |
| Intercontinental Contractors, Inc. v. Canadian Maritime Carriers, Ltd., 1986 U.S. Dist. LEXIS 25872 (E.D.PA. May 6, 1986) | 8 |
| Kossick v. United Fruit Co., 365 U.S. 731 (1961) | 8 |
| Leuallen v. Borough of Paulsboro, 180 F.Supp.2d 615 (D.N.J. 2002) | 13 |
| Maersk, Inc. v. Neewra, Inc., 2006 U.S. Dist. LEXIS 73096 (S.D.N.Y. Oct. 6, 2006) | 4 |
| Manway Constr. Co., Inc. v. Hous. Auth. Of the City of Hartford, 711 F.2d 501 (2d Cir. 1983) | 5 |

Maritima Petroleo e Engenharia Ltda v. Ocean Rig I AS, 78 F.Supp.2d 162 (S.D.N.Y. 1999) ... 7

R.E. Cummer & Co. v. Nuveen, 147 F.2d 3 (7th Cir. 1945) ... 11

Roger Edw3ards, LLC v. Fiddles & Son, Ltd., 437 F.3d 140 (1st Cir. 2006) ... 12

Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574 (1999) ... 4

Sea Transport Contractors, Ltd. v. Industries Chemique du Senegal, 411 F.Supp.2d 386 (S.D.N.Y. 2006) ... 8

Shanghai Sinom Import and Export v. Exfin (India) Mineral Ore Co. Pvt. Ltd., 06 CIV 4711 (GEL) (S.D.N.Y. Oct. 5, 2006) (unpublished, copy attached as Ex. 5 to the Kahn Affirmation) ... 9

Shipping Financial Serv. Corp. v. Drakos, 140 F.3d 129 (2d Cir. 1998) ... 7

Slater v. Skyhawk Transportation, Inc., 187 F.R.D. 185 (D.N.J. 1999) ... 13

Woodcraft Works, Ltd. v. United States, 139 Ct.Cl. 149 (July 12, 1957) ... 10

**Treatises**

Benedict on Admiralty (2005) ... 8

Thomas J. Schoenbaum, Admiralty and Maritime Law (2d ed. 1999) ... 7, 8

Restatement of Contracts, 2d ... 12

Williston on Contracts (4th ed. 2007) ... 11

## PRELIMINARY STATEMENT

This Memorandum of Law is respectfully submitted along with the accompanying Rastogi and Sach Declarations and Kahn Affirmation in support of Defendant Pacific Inter-Link Sdn Bhd ("PIL")'s motion to vacate or reduce the attachment obtained by Plaintiff EFKO Food Ingredients Ltd. ("EFKO") and/or to dismiss the action in its entirety. For the reasons set forth below, the attachment should be found to be obtained in bad faith and should be vacated, awarding PIL its fees and disbursements expended in this action, and the Court should also find that subject matter jurisdiction is entirely lacking and should accordingly dismiss the action.

## BACKGROUND FACTS

For the complete background to this matter, the Court is respectfully referred to the accompanying Rastogi Declaration. The salient background facts, however, are repeated in short as follows.

In or about August or September 2007, PIL was approached by Mr. Adrian Bell of Pontus Trading, who was soliciting offers for the sale of palm olien to EFKO. Pontus was acting as an intermediary trader, and PIL had prior experience selling palm oil product via Mr. Bell/Pontus. See Rastogi Declaration ¶4.

Following some negotiations, PIL issued to Mr. Bell/Pontus six offers for the sale of palm olien to EFKO on September 11, 2007. All six offers were pre-signed by PIL and contained the same provision concerning the mode of acceptance of the offers:

> The buyers shall acknowledge contents and receipt of this document, by the close of working hours today by returning the signed/sealed copy of the sellers. If the signed & sealed copy of the contract is not received as mentioned above, the seller shall have the right to cancel the contract.

Copies of the six offers are annexed to the Rastogi Declaration as Ex. 1. See also Rastogi Declaration ¶4-5.

On September 11, 2007, Mr. Bell/Pontus responded to the offers, noting that the quality term at the delivery port had not been included in the offer, stating that the acceptance within one day could not be guaranteed, because he first needed to translate the offers before sending them on to EFKO, and requesting that PIL agree not to make the offer directly to EFKO, an arrangement we had made previously with him on prior deals. Rastogi Declaration ¶8 and Rastogi Declaration Ex. 2.

On September 14, 2007, still without any confirmed acceptance of PIL's offers, PIL sent two separate emails to Mr. Bell, advising that for the contracts to become valid and effective, EFKO's signed and sealed copies needed to be returned on/before September 17, 2007. Rastogi Declaration ¶9-10 and Rastogi Declaration Ex. 3.

The September 17, 2007 deadline passed without any action from EFKO or Mr. Bell/Pontus, and on September 24, 2007, PIL issued a revocation of the six offers that had been made. PIL's letter made clear that due to EFKO's failure to execute the offers and form valid contracts, the six offers were revoked and no longer valid. Rastogi Declaration ¶11-12 and Rastogi Declaration Ex. 4-5.

More than two months later, on November 26, 2007, EFKO's General Manager Evgeny Lyashenko, sent a message to PIL via email. His message stated that EFKO had contracted with Pontus Trade to purchase palm olien, and that the contract with Pontus was back-to-back with the contract between Pontus and PIL. EFKO's email provided FOB and CIF prices for the palm olien (assuming this communication was an effort at further negotiation, it failed to indicate which was to apply or if PIL was to make an

election), and indicated that Mr. Lyashenko knew that PIL was not going to provide the palm olien, which of course called into question the legitimacy of any perceived further attempt by EFKO to negotiate purchase of palm olien from PIL. Rastogi Declaration ¶13 and Rastogi Declaration Ex. 6.

PIL responded the next day, expressing surprise at Mr. Lyashenko's message, inasmuch as the offers had been withdrawn and that this was the first that PIL had heard from EFKO despite numerous requests that EFKO execute the offers. Rastogi Declaration ¶14 and Rastogi Declaration Ex. 7.

Ultimately, EFKO demanded arbitration of PIL, nominating its arbitrator under FOSFA arbitration rules. FOSFA arbitration at London, England was specified in the offers made by PIL (which had never been accepted and which had been revoked), and PIL nominated its arbitrator in response as a protective measure, submitting that the first issue to be decided is whether there is any valid basis for arbitration, owing to the lack of any agreement to arbitrate between the parties, which are not in privity of contract with one another. Rastogi Declaration ¶17-21; Sach Declaration ¶11-12. EFKO has recently submitted its claim in the arbitration, but has not provided any documentary support to lend credence to its claim that it had a contract with PIL to purchase a quantity of palm olien. Rastogi Declaration ¶19-21.

EFKO thereafter commenced the instant action, seeking security pursuant to Rule B from PIL in the amount of nearly $6 million. The Court granted EFKO's *ex parte* application for an attachment and EFKO has now become fully secured by restraining PIL's wire transfers up to the specified amount.

**ARGUMENT**

**Point I**

**THIS COURT SHOULD CONSIDER DISMISSAL
OF THIS ENTIRE ACTION
FOR LACK OF SUBJECT MATTER JURISDICTION**

It is well-established that an application to vacate an attachment pursuant to Rule E(4)(f) is not the proper procedural device by which a defendant may seek dismissal of an action. *See, e.g.*, Maersk, Inc. v. Neewra, Inc., 2006 U.S. Dist. LEXIS 73096 (S.D.N.Y. Oct. 6, 2006). Nonetheless, when it is evident that there is a complete lack of federal subject matter jurisdiction, the Court should dismiss the action *sua sponte*, even in the absence of an application by a defendant pursuant to Rule 12. In Galland v. Margules, 2005 U.S. Dist. LEXIS 17125 (S.D.N.Y. Aug. 17, 2005), *aff'd* 2006 U.S. App. LEXIS 19809 (2d Cir. July 6, 2006), the Court dismissed the plaintiff's action *sua sponte*, even in the absence of an application by the Defendant pursuant to Rule 12 because there was no cognizable federal cause of action under 28 U.S.C. §§1331 or 1332 (the action was plainly not maritime and would not have been within the meaning of Rule 9(h) or 28 U.S.C. §1333). The Second Circuit affirmed the ruling by Judge Chin in Galland, noting that the plaintiff's injuries (if true) were unfortunate, but that the federal courts were an improper place to seek relief.

A party seeking relief in a District Court of the United States must plead facts that bring the suit within the court's subject matter jurisdiction. Rule 8(a)(1). The failure to plead such facts warrants dismissal. Rule 12(h)(3). Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 583 (1999) ("Subject-matter delineations must be policed by the courts on their own initiative...."); FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 231 (1990)

(courts have an "independent obligation to examine" the basis of their jurisdiction); <u>Manway Constr. Co., Inc. v. Hous. Auth. of the City of Hartford</u>, 711 F.2d 501, 503 (2d Cir. 1983) (citing Rule 12(h) when holding that courts may dismiss cases *sua sponte* for lack of subject matter jurisdiction).

Here, Plaintiff EFKO has pled only the existence of admiralty jurisdiction based on the allegation that a contract existed between EFKO and PIL by which PIL was obliged not only to sell EFKO a quantity of palm olien, but also to charter a ship and to load the ship with this product. No such contract exists, however. As is clear from EFKO's own contemporaneous writings, its contract (if any) was with Pontus, not with PIL. The offers made by PIL were never accepted by Pontus (or by EFKO) and were revoked. Accordingly, no contract of any nature – maritime or otherwise – was ever formed. EFKO has been thoroughly unable to support its allegation of the existence of a maritime contract with any documentary or other support and the Court should accordingly conclude that its failure to do so is evidence of a lack of any ability to submit such proof as required by Rule 8. Even if a contract had been formed on the basis of PIL's offers, such contract would only be a sale and purchase contract, which is non-maritime in any event.

EFKO, in an effort to give a "salty flavor" to its Verified Complaint, alleges that the parties' contract (which of course does not exist) requires PIL to charter a ship and to load the ship with the palm olien. Even the offers are devoid of any such requirement. While the offers are on a cost and freight basis, this means only that the sale price includes the charge for freight. Such a delivery term in an ordinary contract for the sale and purchase of goods certainly does not make the contract maritime in nature.

Otherwise, every sale and purchase contract with a delivery term (which, it is submitted, is nearly every such contract) which would involve maritime transport would fall within the purview of this Court's otherwise narrowly-construed maritime jurisdiction.

EFKO should not be permitted to pick and choose from among the terms of PIL's offer to misleadingly make out a case that is entirely favorable to it. The offer also includes a requirement to arbitrate before FOSFA in London, England. This is an incorporation of English law (see Sach Declaration ¶4), which would not recognize such a contract – or any dispute under it – as falling within the English court's admiralty jurisdiction. Sach Declaration ¶13-14.

For the reasons set forth above and below in Point II, this Court should conclude that admiralty jurisdiction is lacking. Although not pled by EFKO in its Verified Complaint as a basis for federal subject matter jurisdiction, the Court could also conceivably take subject matter jurisdiction over this matter pursuant to the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. §203, to do so, it must make a positive finding that there is an "agreement in writing to arbitrate" pursuant to the Convention, §201. In the absence of any contract between the parties, there of course is no agreement in writing to arbitrate, and this basis of the Court's subject-matter jurisdiction should also be rejected.[1]

If the Court finds that federal subject matter jurisdiction is lacking, the Court need go no further: the action should be dismissed with prejudice and the restrained funds should accordingly be released.

---

[1] Even if the Court were to charitably accept subject matter jurisdiction under the New York Convention, the same would not render the dispute maritime in nature, and at a minimum, the attachment should be vacated, even if the action is not dismissed in its entirety.

NYDOCS1/310176.1                    6

**Point II**

**ADMIRALTY JURISDICTION IS LACKING
AND THEREFORE THIS COURT MUST
VACATE THE ATTACHMENT**

It is black-letter law that a maritime attachment pursuant to Rule B may not be maintained in the absence of maritime jurisdiction over the plaintiff's claim. Rule A provides that the Supplemental Rules (which include Rule B) apply only to "the procedure in admiralty and maritime claims within the meaning of Rule 9(h)". Rule A(1). *See also* Maritima Petroleo e Engenharia Ltda v. Ocean Rig 1 AS, 78 F.Supp.2d 162, 166 (S.D.N.Y. 1999), *citing* 2 Thomas J. Schoenbaum, Admiralty and Maritime Law, §21-2 at 471 (2d ed. 1999) (a Rule B maritime attachment can be invoked only when a plaintiff files a verified complaint sufficient to make a *prima facie* showing that the plaintiff has a valid maritime claim against the defendant in the amount sued for). ***"The absence of maritime jurisdiction would prove fatal to [a] plaintiff's attachment."*** Id. (emphasis supplied).

The plaintiff bears the burden of establishing that the federal court has subject matter jurisdiction over its claim. The subject matter jurisdiction of the court must be affirmatively proven and the Court is not permitted to infer subject matter jurisdiction. Shipping Financial Serv. Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998) (holding that "when the question to be considered is one involving the jurisdiction of a federal court, jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it").

Admiralty jurisdiction does not extend to contracts in which the maritime aspects are incidental to the purpose of the contract. While the courts have generally found the

outer limits of the boundaries of admiralty jurisdiction difficult to draw, "[t]he United States Supreme Court has held that the 'true criterion' and 'crucial consideration' for determining admiralty jurisdiction is the 'nature and subject matter of the contract at issue.'" Sea Transport Contractors, Ltd. v. Industries Chemique du Senegal, 411 F.Supp.2d 386, 393 (S.D.N.Y. 2006); *see also* Kossick v. United Fruit Co., 365 U.S. 731 (1961). In determining the "nature and subject matter of the contract at issue", it is well-established that the contract should only be identified as a maritime contract if it "directly and intimately related to the operation of a vessel and navigation; it is not enough that the contract relate in some preliminary (shore side) manner to maritime affairs." 1 Thomas J. Schoenbaum, Admiralty and Maritime Law, §3010 at 111.

Importantly, admiralty jurisdiction does not attach to a contract merely because the services to be performed under the contract have reference to a ship, or to its business, or that the ship is the object of such services. Intercontinental Contractors, Inc. v. Canadian Maritime Carriers, Ltd., 1986 U.S. Dist. LEXIS 25872, *2 (E.D.PA. May 6, 1986), *referencing* 1 Benedict on Admiralty §182 (2005). "In order to be considered maritime, there must be a ***direct and substantial link*** between the contract and the operation of the ship, its navigation, or its management afloat, taking into account the needs of the shipping industry, for the very basis of the constitutional grant of admiralty jurisdiction was to ensure a national uniformity of approach to world shipping." 1 Benedict on Admiralty §182 (2005) (emphasis supplied).

Here, the subject matter of the only potential contract to which Defendant PIL is alleged to be a party (which is denied) is the sale and purchase contract of a quantity of palm olien. Neither palm olien nor the sale thereof is directly or intimately related to the

operation of a vessel or its navigation. It has been widely held that a commodity sale and purchase contract, such as the one alleged by EFKO to exist (which is denied), even if the contract requires maritime transport relating to the shipment of the commodity, is not maritime. French Republic v. Fahey, 278 F. 947, 949 (D.MD. 1922) (indicating that a non-maritime contract of sale and purchase does not become maritime merely because one of the parties may be entitled to recover demurrage damages); Aston Agro-Industrial AG v. Star Grain Ltd., 2006 U.S. Dist. LEXIS 91636 (S.D.N.Y. Dec. 20, 2006) (holding that a sale and purchase contract is not maritime merely because it contains maritime terms, such as a requirement to pay demurrage, and does not give rise to maritime jurisdiction, even if the sole claim relates to the non-payment of demurrage). *See also* Shanghai Sinom Import and Export v. Exfin (India) Mineral Ore Co. Pvt. Ltd., 06 CIV 4711 (GEL) (S.D.N.Y. Oct. 5, 2006) (unpublished, copy attached as Ex. 5 to the Kahn Affirmation) (holding that the breach of a provision of a sale and purchase contract does not give rise to maritime jurisdiction, vacating attachment); FH Bertling Holding KG v. Ranhill Engineers and Constructors, 2008 U.S. Dist. LEXIS 52085 (S.D.N.Y. July 9, 2008) (vacating attachment and dismissing action on basis of a lack of maritime jurisdiction when underlying contract was merely for the supply of logistics support (which included a maritime component)).

The relevant underlying alleged contract (the existence of which is denied) in this action is a sale and purchase contract. That contract is not maritime in nature, and any alleged breach of that contract – even with respect to the shipment of the product – does

not give rise to maritime jurisdiction.[2]  Any responsibility to arrange for shipment (assuming, *arguendo,* such responsibility exists – see below) is only incidental to the sale and purchase contract as a whole. *See* Woodcraft Works, Ltd. v. United States, 139 Ct. Cl. 149 (July 12, 1957) (holding that a sale and purchase contract for lumber which required the payment of demurrage was not a maritime contract and did not give rise to maritime jurisdiction, even though the only claim was for the payment of demurrage).

That there was a delivery term in the subject purported sale and purchase contract that involved anticipated ocean transport is irrelevant, as this term (which provided only for the purchase price to include cost and freight) was not a "direct and substantial link" between the contract and the operation of a vessel. To hold otherwise would be to significantly enlarge the Court's maritime jurisdiction by allowing all sale and purchase contracts which contain delivery terms to be subsumed within the Court's admiralty jurisdiction. This result is true not only under American law, but also under English law (which is the law of the offers). See Sach Declaration ¶4, 13-15.

Given the absence of maritime jurisdiction, the attachment must be vacated.

**Point III**

**EFKO'S ENTIRE APPLICATION IS FRIVOLOUS
AND THE ATTACHMENT SHOULD BE VACATED
OR AT LEAST REDUCED**

EFKO's entire application before this Court is frivolous and should be rejected. It is well-established that the Court should vacate an attachment when the merits of the

---

[2] It does not even appear that EFKO's contract with Pontus (assuming there was one) was maritime, as that contract likely would only have involved the sale of the palm olien by Pontus to EFKO on terms that required Pontus to arrange for the ocean carriage of the cargo. Even to the extent, though, that EFKO might have a maritime claim against Pontus, it does not have a maritime contract or even a maritime claim against PIL.

plaintiff's claim are frivolous. Finecom Shipping Ltd. v. Multi Trade Enterprises AG, 2005 U.S. Dist. LEXIS 25761 (S.D.N.Y. Oct. 25, 2005). It has been demonstrated above that EFKO lacks admiralty subject matter jurisdiction because it has no maritime claim. The Verified Complaint, though, is riddled with other fatal flaws which go directly to the heart of whether EFKO has any valid claim at all.

The first of these flaws is the fact that there is no contractual agreement at all between the parties – the allegations of such an agreement set forth in the Complaint are entirely false, unsupported, and unsupportable. PIL made an offer, which was not accepted and which was later revoked more than two months before EFKO attempted (and failed) to re-initiate negotiations in November 2007. Under English law which is applicable to the offer, no contract was formed, and the revocation was effective. See Sach Declaration, ¶5-10. Well-settled American black letter law is the same on these points and would similarly lead to only one result – that no contract had been formed because the offeree did not accept the offer in a timely manner, did not accept it in the form specified, and did not accept the offer before it had been withdrawn. See, *e.g.*, 2 Williston on Contracts §6.12 (4th ed. 2007) at 125 (when an offeror specifies a mode of acceptance of an offer to contract, no contract is formed unless the recipient of the offer makes an acceptance in the form specified); 1 Williston on Contracts §5.5 (4th ed. 2007) at 948 (*citing* R.E. Cummer & Co. v. Nuveen, 147 F.2d 3 (7th Cir. 1945)) (if an offer is not accepted by the date allowed by the offeror, then the offer is terminated, unless the offeror – at its option – chooses to extend the deadline); 1 Williston on Contracts §5.2 (4th ed. 2007) at 899 (once an offer is withdrawn or otherwise terminated, it cannot be revived

by the recipient). For additional support, *see also* Restatement of Contracts, 2d, §§23, 30(2), 35, 36. EFKO's entire claim is plainly frivolous as it is legally unsupportable.

What is especially disturbing is the fact that EFKO's New York counsel verified that the allegations set forth in its Complaint were true, but when asked by PIL to provide support for such allegations, were thoroughly unable to supply any proof at all as to the existence of any contract between EFKO and PIL (let alone a maritime one). Kahn Aff. ¶5-7. Rule 11 requires a plaintiff to investigate the truth of the allegations asserted before signing. *See, e.g.,* Roger Edwards, LLC v. Fiddles & Son, Ltd., 437 F.3d 140, 142 (1st Cir. 2006). Counsel who signs on behalf of a client is also required to investigate the truth of the allegations *before* executing and filing the complaint.

> The signature of an attorney or party constitutes a certificate by the signer that…to the best of the signer's knowledge, information and belief *formed after reasonable inquiry* it is well grounded in fact.

Fed.R.Civ.P. Rule 11 (emphasis supplied). *See also* Business Guides, Inc. v. Chromatic Communications Enterprises, Inc., 498 U.S. 533, 541 (1991). EFKO's counsel's inability to produce any documentation supporting the existence of a contract between EFKO and PIL is an indication that no such investigation into the facts was done prior to filing and that instead, EFKO's New York counsel relied entirely on the say-so of their instructing counsel in the Ukraine. Kahn Aff. ¶5-11. EFKO's New York counsel, even if they felt compelled by some purported emergency need (which is denied by PIL to exist) to file first and seek documentary proof later, failed to ever seek or obtain any such proof until faced with a Rule 11 safe harbor letter. The documents obtained by EFKO's New York counsel after the fact – merely the offers by PIL (without acceptance by EFKO) and an after-the-fact unsworn letter from Pontus Trade's Mr. Bell which contradicts his own

contemporaneous writings – do not in any way support the allegations set forth in the Verified Complaint. At a minimum, when a plaintiff asserts a breach of contract claim, the plaintiff's counsel, signing the complaint on the party's behalf, should be able to satisfy himself that a contract in fact exists. Plainly in this case that was not done and an award of sanctions, it is respectfully submitted, should be considered. "[P]leadings that are…without factual foundation may appropriately be sanctioned by the Court." Slater v. Skyhawk Transportation, Inc., 187 F.R.D 185, 199-200 (D.N.J. 1999); *see similarly* Leuallen v. Borough of Paulsboro, 180 F.Supp.2d 615 (D.N.J. 2002).

Moreover, the filing of a Verified Complaint signed by counsel under the sanction of Rule 11, particularly in a situation where, as here, the Verified Complaint is utilized to obtain *ex parte* relief restraining the property of the defendant, acts as an affidavit made by the attorney. Cabassa v. Gummerson, 2006 U.S. Dist. LEXIS 41098, *6 (N.D.N.Y. Mar. 30, 2006). When a party has submitted a false affidavit containing claims that are knowingly false or where the attorney executing the verification could have discovered the falsity of such claims by an investigation of the background facts, the Court, in its discretion, is free to deny the requested relief on this ground alone. Id. It is submitted that given the plainly false allegations made in the Verified Complaint about the very existence of any contract between EFKO and PIL, let alone the false allegations about the existence of any maritime claim against PIL, the Court would be well within the bounds of its discretion to vacate the attachment in this matter on this basis alone, even if the Court does find, *arguendo*, that it has subject matter jurisdiction in the first place.

Finally, it is respectfully submitted that the amount of damages claimed by EFKO is also grossly and irresponsibly exaggerated. EFKO's complaint seeks to restrain PIL's

property in the amount of $600,000 to secure a potential award of attorneys fees in the FOSFA arbitration. FOSFA arbitrators, though, do not as a rule award attorneys fees. Sach Declaration ¶15-17. See also FOSFA arbitration guidelines and rules, annexed to the Kahn Affirmation as Ex.'s 6 and 7. Accordingly, EFKO has no reasonable expectation of any such award, even if, *arguendo*, it were to succeed on the remainder of its claim. At a minimum, therefore, the attachment should be reduced at least to this extent.

It is respectfully submitted that this Court should find that the attachment was obtained in bad faith, and should vacate the attachment in its entirety, awarding PIL its reasonable attorneys fees in bringing this action as a sanction. Alternatively, the attachment should, at a minimum, be reduced by the exaggerated portion and these funds should be returned to PIL.

## CONCLUSION

For all the foregoing reasons, the action should be dismissed for lack of federal subject-matter jurisdiction, or, alternatively, the attachment should be dismissed or reduced, with a finding that the attachment was wrongful and brought in bad faith, awarding PIL its reasonable attorneys fees in bringing this application.

Dated: New York, New York
       August 13, 2008

>                    Respectfully submitted,
>                    FREEHILL HOGAN & MAHAR, LLP
>                    Attorneys for Defendant
>                    Pacific Inter-Link Sdn Bhd
>
> By: _____
>                    Lawrence J. Kahn (LK 5215)
>                    80 Pine Street
>                    New York, NY 10005
>                    (212) 425-1900
>                    (212) 425-1901 fax